# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 96-KA-00205-SCT

*MARVIN LEWIS JONES*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 02/17/89 |
| TRIAL JUDGE: | HON. DARWIN M. MAPLES |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | RICHARD C. CONANT |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JEFFREY KLINGFUSS |
| DISTRICT ATTORNEY: | DALE HARKEY |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND REMANDED - 11/26/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 12/17/97 |

**BEFORE PRATHER, P.J., BANKS AND McRAE, JJ.**

**BANKS, JUSTICE, FOR THE COURT:**

¶1. This matter is before this Court following the appellant's conviction by a jury for distribution of a controlled substance (cocaine) and sentence as an habitual offender to thirty years imprisonment without parole. The appellant challenges the admission into evidence of prior, unrelated fourteen-year-old heroin distribution convictions, the failure of the court to *sua sponte* give the jury a limiting instruction regarding the prior convictions, the lower court's alleged personal bias against him, the habitual offender sentencing, and ineffective assistance of counsel. Because we find that the admission into evidence of the fourteen-year-old convictions was reversible error, we reverse and remand.

### I.

¶2. On December 14, 1988, a grand jury indicted the appellant, Marvin Lewis Jones (Jones) for distribution of a controlled substance (cocaine) in cause number 88-10,694. The indictment alleged six prior convictions from 1975 for distribution of heroin in support of the State's request that Jones be sentenced as a habitual offender pursuant to Miss. Code Ann. § 99-19-81 and in support of the

request that he be doubly penalized under Miss. Code Ann. § 41-29-147. Jones pled not guilty to the charges against him and elected to have a jury trial.

¶3. Trial was held on February 17, 1989. Officer James Kitchens testified that he, along with other officers of the Jackson County Sheriff's Department and the Pascagoula Police Department, executed a drug sting operation of the Machpelah Street area in Moss Point, Mississippi. Kitchens wore a wire during the sting. The target of the sting operation was Tony's Tiptop Club on Machpelah Street.

¶4. Kitchens testified that he had previously been to the club approximately ten or twelve times. When Kitchens drove up to the club at about 11:00 a.m. on October 05, "Marvin" walked up to the truck and asked the undercover officer what he needed (referring to drugs). Kitchens requested a "rock." "Marvin" told the officer to "just sit there" until he returned. In the interim, the owner of the club, Tony, came to the truck, peered inside, and returned to the club. Then "Marvin" came back out, sat inside the truck, and gave Kitchens a "rock" of crack cocaine wrapped in a napkin in exchange for $100.

¶5. Immediately following the drug transaction, Kitchens met the other police officers at a nearby hotel room where he described Tony and "Marvin." Prior to the trial, Kitchens identified Jones in a photo lineup as the man called "Marvin," who sold him the "rock" for $100. In addition, Kitchens identified Jones at trial.

¶6. The drug transaction was taped via a wire worn by Kitchens. The tape was admitted into evidence and played for the jury.[1] Kitchens identified the voices on the tape as belonging to him, the club owner (Tony), and Jones. However, on cross-examination, Kitchens admitted that the tape was of "poor quality" and that the only way the jury knew that Jones was on the tape was because Kitchens said so. Similarly, the trial judge noted the "poor quality" of the tape. Despite the shortcomings of the tape, the officer emphasized that he knew Jones before the sting operation, evidenced by the fact that he knew Jones' nickname was "Blackie."

¶7. The defense's first witness was Tony, the owner of Tony's Tiptop Club, who testified that he had known Jones for a substantial length of time and that he had never witnessed Jones selling drugs at his club. Tony also stated that he did not recall seeing Kitchens at his club on October 05, 1988. After Tony's testimony, counsel for Jones informed the court that Jones was going to testify in his own defense. Counsel argued that the State should not be allowed to introduce evidence of Jones' fourteen-year-old heroin distribution convictions as they were too old, highly prejudicial, and not probative. The State, on the other hand, argued that prior convictions that were beyond the ten-year limitation were admissible if the court decided they had probative value. Emphasizing the type of drug involved in the prior convictions (heroin) and the instant case (cocaine), the trial court concluded that the probative value outweighed the prejudicial effect and, as such, ruled that he would allow the State to question Jones about the fourteen-year-old priors, whether the defense opened the door or not.

¶8. Subsequently, Jones testified and conceded that he frequently patronized Tony's Tiptop Club. However, he disputed Kitchens' testimony that he sold Kitchens crack cocaine on October 05, 1988. He further alleged that his voice was not depicted on the audiotape. He admitted that he met Kitchens at the club in early October, but according to Jones, the circumstances of the meeting were quite different from those alleged by the officer. Jones also denied being referred to as "Blackie." On

cross-examination, the prosecutor asked Jones about his lack of employment and then about the prior convictions. In the State's closing argument, the prosecutor referred to Jones as a "six time convicted heroin dealer."

¶9. Based upon the evidence presented, the jury found Jones guilty as charged in the indictment and the trial court immediately sentenced him to thirty years imprisonment without parole. In a subsequent hearing, the trial court found Jones to be a habitual offender, but declined to double his sentence as allowed under the double penalty statute.

¶10. Following his conviction, Jones filed numerous *pro se* motions in the trial court as his trial attorney did not file timely notice of appeal or any other post-trial motion on his behalf. We granted Jones' writ of mandamus and directed the lower court to enter an order disposing of the multitude of *pro se* motions. After some time, the circuit court granted Jones an out-of-time appeal, and he now assigns the following as error.

## II.

### THE TRIAL COURT ERRED IN OVERRULING JONES' OBJECTION TO THE ADMISSION INTO EVIDENCE OF PRIOR, UNRELATED CRIMES AT HIS TRIAL.

¶11. Jones first argues that the trial court committed reversible error in admitting into evidence his fourteen-year-old prior felony convictions for distribution of heroin. The State concedes that the admission of these priors was error, but nevertheless argues that the error was harmless in light of the overwhelming evidence against Jones, emphasizing the eyewitness testimony of Officer Kitchens and the tape that was played for the jury (the very tape that Officer Kitchens and the lower court described as "poor quality").

¶12. The dispositive rule in this case is Miss. R. Evid. 609(b) which provides in pertinent part:

> Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed . . . *unless* the court determines, in the interests of justice, that the probative value of the conviction supported by the specific facts and circumstances substantially outweighs its prejudicial effect. *However, evidence of a conviction more than ten years old as calculated herein, is not admissible unless the proponent gives to the adverse party sufficient advance written notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence*.

Miss. R. Evid. 609 [2] (emphasis added).

¶13. As Rule 609(b) plainly dictates, the first step an offering party must take in order to impeach a witness with evidence of a prior conviction that is more than ten-years-old is to provide the opposing party with advance, written notice of the intent to introduce such evidence. Next, the offering party must meet a threshold burden of showing, *prima facie*, the probative value of the prior conviction. *McGee v. State*, 569 So. 2d 1191, 1195 (Miss. 1990); *Signer v. State*, 536 So. 2d 10, 13 (Miss. 1988); *McInnis v. State*, 527 So. 2d 84, 88 (Miss. 1988); *Johnson v. State*, 525 So. 2d 809, 812 (Miss. 1988). In short, the offering party must show how the prior conviction "suggest[s that] the witness [is] less than credible." *McInnis*, 527 So. 2d at 88.

¶14. After this threshold showing, the trial court is then required to conduct an on-the-record weighing of the probative value of the proffered prior conviction versus the prejudicial effect of the prior crime. *McGee*, 569 So. 2d at 1195 (*citing Peterson v. State*, 518 So. 2d 632, 636-37 (Miss. 1987)) (providing the five factors to be used by the trial court in determining if the prior conviction is more probative or prejudicial). The purpose of this on-the-record balancing requirement is so that on appeal "this Court can more easily ascertain whether or not the trial judge has abused his discretion in granting or denying admissibility of prior convictions for impeachment purposes." *McGee*, 569 So. 2d at 1195 (*quoting Johnson*, 525 So. 2d at 812).

¶15. In cases in which lower courts fail to conduct the required balancing test, this Court has done one of two things. In some cases, we performed the balancing test ourselves. *See Peterson*, 518 So. 2d at 637; *Johnson*, 525 So. 2d at 812. However in those cases where the accused's credibility was central to his defense or where the evidence was hotly disputed, we took a different course and remanded the case for retrial. *See McGee*, 569 So. 2d at 1197 (*citing Signer*, 536 So. 2d at 12-13); *Pugh v. State*, 584 So. 2d 781, 785 (Miss. 1991).

¶16. Here, not one rule concerning the admission into evidence of convictions more than ten years old was adhered to. The State did not provide Jones with advance, written notice of its intent to use the fourteen-year-old convictions. Nor did the State carry its threshold burden of showing, *prima facie*, the probative value of the prior convictions. Still further, the trial court failed to conduct an on-the-record weighing of the probative value and prejudicial effect of the prior convictions in a case in which Jones' credibility was central to his defense and where the account of the incident came down to opposing stories from Jones and Kitchens. Clearly, Rule 609(b) was violated.

¶17. In *Townsend v. State*, 605 So. 2d 767 (Miss. 1992), we were faced with a similar situation involving the admission into evidence of prior convictions. There, the appellant was convicted of burglary. At his trial, the lower court admitted into evidence two prior burglary convictions that were seven-years-old, ruling that the credibility of the appellant was a "prime element in the jury's decision." *Id.* at 769. The appellant appealed the decision, and this Court ruled that the impeachment, using the prior burglary convictions, should not have been allowed for the following reasons. First, we noted that burglary was not necessarily a crime affecting one's veracity. Secondly, we noted that the prior convictions were seven years old, a fact which greatly lessened their probative value. Also, the prior crimes were identical to the crime charged, i.e., burglary. We therefore cautioned that prior convictions must only be used to attack credibility and not to show "'a propensity on the part of the defendant to have acted on the present occasion in conformity with the criminal character suggested by the previous conviction.'" *Id.* at 770-71 (*quoting McGee*, 569 So. 2d at 1195); *see also Pugh*, 584 So. 2d at 785. We further explained that since the appellant was the only defense witness, his credibility was crucial to the defense, and even though credibility was central to the jury's decision-making, the low probative value of the seven-year-old convictions militated against their admission into evidence. *Townsend*, 605 So. 2d at 771. There, we reversed and remanded, stating in a footnote:

> Some members of the Court are of the view that the lower court erred but that the error was harmless under the overwhelming evidence of guilt. However, lower courts and prosecuting attorneys must not commit errors on the speculation that the Supreme Court will affirm on the ground of harmless error. Cases must be tried and evidence must be admitted according to the

law.

*Id.* at 771 n.1.

¶18. Here, the State concedes error but nevertheless argues that the error was harmless in light of the overwhelming evidence against Jones. This Court is unpersuaded by this argument. The tape, which is emphasized by the State as an example of the overwhelming evidence against Jones, was described by the *State's* key witness *and* the trial court as "poor quality," not to mention the fact that it is missing from the record. Moreover, even though Officer Kitchens provided eyewitness testimony of the drug transaction and identified Jones as the drug seller, Jones disputed every detail of the officer's testimony.

¶19. Thus, Jones' credibility becomes a critical piece of evidence, thereby making the admission of the prior convictions even more damaging and harmful if relied upon by the State and jury as substantive evidence of Jones' guilt in the present matter, which is what appears to have been the State's purpose because during closing argument the prosecutor referred to Jones as a "six time convicted heroin dealer." Such reliance on prior convictions to show present guilt is improper and will not be sanctioned. *McLemore v. State*, 669 So. 2d 19, 22 (Miss. 1996) (cautioning that prior crimes must be used *only* to attack an accused's credibility as the risk is great that a jury may conclude the accused committed the present crime because he had a prior criminal tendency).

¶20. It is, therefore, this Court's conclusion that Rule 609(b) was not adhered to and that the admission of the fourteen-year-old heroin distribution convictions was manifestly prejudicial, warranting reversal and remand.[3]

¶21. **REVERSED AND REMANDED.**

**PRATHER AND SULLIVAN, P.JJ., AND McRAE, J., CONCUR. LEE, C.J., CONCURS IN RESULT ONLY. PITTMAN, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY McRAE, ROBERTS AND MILLS, JJ. SMITH, J., NOT PARTICIPATING.**

### PITTMAN, JUSTICE, SPECIALLY CONCURRING:

¶22. I concur in that the State conceded confessed error in that a 14-year old conviction was admitted into evidence in violation of Miss. R. Evid. 609(b) and I would hold such error is not harmless. Therefore, I concur in the result, but I do not join in the other language of the opinion.

**McRAE, ROBERTS AND MILLS, JJ., JOIN THIS OPINION.**

1. This exhibit has mysteriously disappeared from the record. For purposes of the instant appeal and our resolution of this matter, the tape is irrelevant.

2. The 1989 version of Miss. R. Evid. 609(b) is the same as the 1997 version, except for an

amendment to the Comment, which is not relevant for purposes of the instant case. Thus, we cite to the 1997 version.

3. Jones also argues that the lower court was personally biased against him, failed to give a limiting instruction, that his sentence as a habitual offender was via an allegedly defective indictment, and that counsel was ineffective. In light of our disposition of Jones' first assignment of error, we decline to address these assignments of error.