# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2002-CT-01585-SCT

*GEORGE C. STODGHILL*

*v.*

*STATE OF MISSISSIPPI*

### ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 06/03/2002 |
| TRIAL JUDGE: | HON. FORREST A. JOHNSON, JR. |
| COURT FROM WHICH APPEALED: | AMITE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | JULIE ANN EPPS |
| | SAMUEL H. WILKINS |
| ATTORNEY FOR APPELLEE: | OFFICE OF ATTORNEY GENERAL |
| | BY: JEFFREY A. KLINGFUSS |
| NATURE OF THE CASE: | CRIMINAL - MISDEMEANOR |
| DISPOSITION: | THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED. CONVICTION OF DRIVING UNDER THE INFLUENCE, FIRST OFFENSE, AFFIRMED - 01/27/2005 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**WALLER, PRESIDING JUSTICE, FOR THE COURT:**

¶1. The Amite County Circuit Court convicted George C. Stodghill of a misdemeanor conviction of first offense driving under the influence of alcohol. The trial court imposed a sentence of forty-eight hours in jail and a $1000 fine, but suspended both due to mitigating circumstances. A divided Court of Appeals reversed the conviction and remanded for further findings, *Stodghill v. State*, 881 So. 2d 885 (Miss. Ct. App. 2004), and we granted the State's

petition for a writ of certiorari, 883 So. 2d 1180 (Miss. 2004). Finding the circuit court's conviction of Stodghill was correct, we reverse the judgment of the Court of Appeals and affirm the judgment of the circuit court.

## FACTS

¶2. George Stodghill and his girlfriend, Carla Kenny, spent a weekend in a secluded country cabin with his adult son and daughter and their spouses. On the night of June 10, the group held an outdoor barbeque, during which everyone consumed different amounts of alcohol. Stodghill consumed three bourbons before he and Kenny went to bed around 9:30.

¶3. Stodghill testified that he awoke from his sleep to discover Kenny staggering around the room. He said she collapsed onto the floor outside their bedroom trembling, sweating, and exhibiting seizure-like symptoms.[1] Hope Armstrong, Stodghill's daughter, called 911 on the cellular phone but was unable to communicate the address of the cabin due to poor reception. After making another 911 call, the operator confirmed the location of the cabin. Armstrong testified,

> [T]hey asked me where I was, and I told them . . . that I was on Finn Road and asked my father what the address was, and he told me . . . the McGehee house, and I remember the dispatcher saying it was the yellow house; that it used to be yellow. And my father said 'Yes, that's the house.'

She testified that they waited "a little while" before her father decided to drive Kenny to the hospital, rather than wait on the ambulance. Despite the fact that Stodghill helped confirm the location to the 911 operator, he testified that he decided to take Kenny to the hospital, because

---

[1]However, other than the testimony offered by Stodghill and the other witnesses, there is nothing in the record which indicates the actual cause, extent, or even existence of Kenny's illness that night.

Armstrong had been unable to get through to 911 on the second phone call and he knew the ambulance was not coming.

¶4.    While Stodghill was on the way to the hospital, State Trooper Scott Clark pulled Stodghill over after he noticed that Stodghill was speeding and crossing the center line. Stodghill's eyes were bloodshot, his breath smelled of alcohol, and when he got out of the car, he staggered as he walked. Clark noticed that Kenny was pale and covered with a blanket. After Clark requested Stodghill to submit to a portable breath test, Stodghill refused and explained that he was taking his sick girlfriend to the hospital. Clark then called an ambulance for Kenny. Soon after the ambulance arrived, Armstrong and her husband drove up to the scene. Clark testified that he did not offer them a sobriety test, because he detected nothing that made him suspect their ability to drive was impaired.[2]  He then released Stodghill's car to Armstrong and her husband, and allowed them to go on to the hospital.

¶5.    After the ambulance arrived, Stodghill agreed to undergo the standard field sobriety tests.[3]  After failing the field sobriety tests, Clark arrested Stodghill for driving under the influence. Clark took Stodghill to the sheriff's department where he refused to submit to an Intoxilyzer 5000 breath test.

¶6.    Stodghill elected to proceed to trial and defended upon the ground of necessity. The trial court found Stodghill guilty and imposed a sentence of forty-eight hours in jail and a $1000 fine but suspended both due to the mitigating circumstances. At a hearing on a Motion

---

[2]Armstrong did testify that she and her husband had both consumed "a few beers" earlier in the night.

[3]The standard field sobriety tests consist of the horizontal gaze nystagmus, the walk and turn, and the one leg stand.

3

for New Trial, the court further explained it found necessity an inadequate defense, because Stodghill had failed to exhaust all possible alternatives before driving a vehicle after consuming alcohol. The Court of Appeals reversed and remanded the case for further fact-finding by the trial court.

## ANALYSIS

¶7. The State petitioned for writ of certiorari, requesting that we reverse the Court of Appeals' decision. The State argues that because Stodghill ignored other alternatives to driving drunk, the trial court correctly found that Stodghill could not use the affirmative defense of necessity to avoid conviction. We granted the petition solely on the issue of whether the Court of Appeals erred when it found the trial court's holding was unsupported by the evidence.

¶8. In *Knight v. State*, 601 So. 2d 403, 405 (Miss. 1992), the Court adopted the defense of necessity and held that when a "person reasonably believes that he is in danger of physical harm[,] he may be excused for some conduct which ordinarily would be criminal." The defense is also available where the defendant reasonably acts out of fear of "imminent danger of death or serious bodily harm" to others. *See McMillan v. State*, 701 So. 2d 1105, 1106-07 (Miss. 1997). To prove that he had an objective need to commit a crime excusable by the defense of necessity, a defendant must prove three essential elements: (1) the act charged was done to prevent a significant evil; (2) there must was no adequate alternative; and (3) the harm caused was not disproportionate to the harm avoided. *Id.* at 1107. Factors such as intoxication or abnormality are irrelevant to the inquiry into objective reasonableness "since the 'reasonable man' standard postulates a sane and sober man." *Taylor v. State*, 452 So. 2d 441, 446-47 (Miss. 1984).

4

¶9. In denying Stodghill's Motion for a New Trial, the trial court stated that because there were adequate alternatives to driving Kenny to the hospital while intoxicated, Stodghill failed to prove the affirmative defense of necessity. The Court of Appeals reversed the trial court, holding that the trial court "never found exactly, or even generally, what alternatives were available and whether or not they were adequate under the circumstances." *Stodghill*, 881 So. 2d at 888. However, the Court of Appeals failed to cite (and we have not found) any authority requiring a trial court to make an on-the-record justification for judgments in these types of cases. When a defendant attempts to prove an affirmative defense, such as necessity, it is his burden to prove that such circumstances exist so as to substantiate such a defense. *See Bush v. State*, 585 So. 2d 1262, 1264 (Miss. 1991).

¶10. Though the record is scant, it fully supports the trial court's finding that Stodghill had at least one adequate alternative at his disposal the night he chose to drive Kenny to the hospital while under the influence of alcohol. At the cabin, Armstrong and her husband were present when Kenny began exhibiting signs of sickness. Officer Clark testified that at the scene of the arrest, the Armstrongs appeared to be sober, while Stodghill was too impaired to pass the field sobriety tests Clark administered. Clark's testimony demonstrates that, rather than driving while intoxicated, Stodghill could have asked either his daughter or her husband to drive Kenny to the hospital.[4]

---

[4]We also note that during the second 911 call, Stodghill and Armstrong confirmed the location of the cabin with the dispatcher. Armstrong testified that after they waited "a little while" for the arrival of the ambulance, Stodghill drove to the hospital. The record does not show whether the ambulance arrived at the cabin after Stodghill left with Kenny.

¶11.    In light of the grave danger posed to the public by drunken drivers, we are reluctant to extend the defense of necessity in all but the most exceptional circumstances of driving under the influence of alcohol. We are troubled by the prospect of those who are alcohol-impaired attempting to justify heinous endangerment to the public simply because they are stranded and have created their own emergency by way of irresponsible drinking. Other jurisdictions' tests for necessity add another prong which naturally addresses the alarming policy implications of finding that a defense of necessity exists in the case of drunken driving. In those jurisdictions, the defense of necessity also includes the burden of proving the emergency did not arise by any fault of the defendant. *See, e.g.*, ***People v. Pena***, 197 Cal. Rptr. 264, 272 (Cal. App. Dep't. Super. Ct. 1983) (dealing with case of drunken driving); *see also* ***State v. Nelson***, 36 P.3d 405, 407 (Mont. 2001); ***State v. Cole***, 403 S.E.2d 117, 119 (S.C. 1991); ***State v. Cram***, 600 A.2d 733, 935 (Vt. 1991). Were we to add this prong to our test for the affirmative defense of necessity, it would bar the use of the defense in cases where an emergency is the consequence of careless or excessive intoxication. However, in light of the fact that Stodghill clearly fails to meet the three requirements of the necessity defense under ***Knight***, this issue is not before us, and we decline to rule on it today.

¶12.    There was adequate evidence in the record for the trial court to find Stodghill did not satisfy the elements of the necessity defense. We therefore affirm the trial court's finding that there were reasonable alternatives available to Stodghill other than driving under the influence of alcohol. We reverse the Court of Appeals' judgment and affirm the judgment of the circuit court.

**CONCLUSION**

6

¶13. The Court of Appeals erred in reversing the judgment of the circuit court. Therefore, we reverse the Court of Appeals' judgment and affirm the circuit court's judgment.

¶14. **THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED. CONVICTION OF DRIVING UNDER THE INFLUENCE, FIRST OFFENSE, AFFIRMED.**

**SMITH, C.J., COBB, P.J., EASLEY, CARLSON, DICKINSON AND RANDOLPH, JJ., CONCUR. GRAVES, J., CONCURS IN RESULT ONLY. DIAZ, J., NOT PARTICIPATING.**