# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-KA-01468-COA

MARTEZ TAYLOR A/K/A MARTEZ D.          APPELLANT
TAYLOR A/K/A MARTEZ DEONTE TAYLOR

v.

STATE OF MISSISSIPPI          APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 07/06/2016 |
| TRIAL JUDGE: | HON. JEFF WEILL SR. |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: HUNTER NOLAN AIKENS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: BARBARA WAKELAND BYRD |
| DISTRICT ATTORNEY: | ROBERT SHULER SMITH |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND REMANDED: 05/08/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE IRVING, P.J., FAIR AND WILSON, JJ.**

**FAIR, J., FOR THE COURT:**

¶1. Martez Taylor was tried for robbery and possession of a firearm by a convicted felon following an altercation with his girlfriend's aunt, Danielle Brent. Brent claimed Taylor had attacked her suddenly and taken her phone, credit cards, and pistol. Taylor testified he took the gun after she threatened him with it and then immediately brought the pistol and the other items (which he had taken by mistake in his haste to leave) to his mother so she could return them. The circuit court refused to instruct the jury on Taylor's asserted defense of necessity

after finding that Taylor had not established that he got rid of the gun at the first opportunity.[1]

The jury acquitted Taylor of robbery but convicted him of possessing a firearm after being convicted of a felony, and Taylor appeals.

¶2.    We agree with the circuit court that, when a convicted felon takes a possession of a firearm out of necessity, he is required to act immediately to relieve himself of it once the need has passed.  But the necessity does not end until the defendant has an adequate alternative to possession of the gun, which means that the defendant may delay when it is necessary to transfer the weapon safely.  We conclude that a reasonable juror who believed Taylor's testimony could have found the necessity defense meritorious.  The jury therefore should have been instructed on Taylor's theory of the case, and because it was not, we reverse his conviction and remand for a new trial.

**DISCUSSION**

**1.    Necessity**

¶3.    "[N]ecessity . . . provides a valid defense to the offense of felon in possession of a firearm, but . . . the record must contain an evidentiary foundation to support the defense." *Anderson v. State*, 185 So. 3d 1015, 1024 (¶37) (Miss. Ct. App. 2014).  The necessity defense requires a showing that "(1) the act charged was done to prevent a significant evil; (2) there [was] no adequate alternative; and (3) the harm caused was not disproportionate to the harm

---

[1] The circuit court also found that Taylor failed to establish necessity to take the gun in the first place, but the State does not advance that theory on appeal.

avoided." *Flowers v. State*, 51 So. 3d 911, 913 (¶7) (Miss. 2010).

¶4.    Taylor testified that he had been staying with his girlfriend and her infant child (Taylor was not the child's father) in a hotel room for about three months, when one morning Brent, his girlfriend's aunt, showed up at the door. The girlfriend let her in, and Taylor noticed Brent was holding a cell phone and a small-caliber pistol. When Taylor tried to leave, Brent—who Taylor testified did not like him seeing her niece and had previously threatened to shoot him—blocked his way and began waiving the pistol and pointing it at him. Brent was "furious" as she waved the gun at Taylor while speaking to her niece. Taylor chose a moment when the gun was not pointed at him to grab it and force it down. The two struggled over the gun until Taylor bit Brent on the wrist and she dropped it. Both went for the gun, but after some "wrestling," Taylor came up with it and Brent "stormed out of the room." Taylor then hurriedly grabbed some of his things that were within arm's reach and left. As he was walking away from the motel, he saw a city bus approaching, and he took it to near where his mother lived. After getting off the bus, Taylor "immediately" went to his mother and gave her the gun and other items that did not belong to him, which he had inadvertently taken when he fled. He asked her to return them, and she did. It is not clear from the record how far Taylor's mother's home was from the motel, but Taylor estimated that he possessed the gun for about twenty minutes.

¶5.    Taylor offered a necessity jury instruction, D-11, but it was refused. The trial court found both that Taylor had failed to show necessity in taking the gun and had failed to show

any necessity in keeping it after Brent left. On appeal, the State only pursues the second theory: that Taylor kept the gun after the necessity had passed.

¶6.   The grant or denial of a jury instruction is reviewed for an abuse of discretion. *McInnis v. State*, 61 So. 3d 872, 875 (¶10) (Miss. 2011). That discretion is limited, however, as "a defendant is entitled to have jury instructions given which present his theory of the case." *Newell v. State*, 49 So. 3d 66, 74 (¶20) (Miss. 2010). The trial court should give such an instruction unless it "incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence." *Id.* And "[w]hen serious doubt exists as to whether an instruction should be included, the doubt should be resolved in favor of the accused." *Id.*

¶7.   The State contends that Taylor's proffered necessity instruction was without foundation in the evidence because "he could have thrown the gun out of the motel room or he could have had [his girlfriend] secure the gun after he took it from [Brent]." The State analogizes this case to *Williams v. State*, 953 So. 2d 260, 263-64 (¶¶7-10) (Miss. Ct. App. 2006), and *Davis v. State*, 69 So. 3d 45, 48-49 (¶¶11-14) (Miss. Ct. App. 2011), but both of those cases involved defendants who armed themselves in advance of confrontations; they have little relevance to today's case. We agree, however, that "[a] defendant is not entitled to a necessity defense when he or she pursues a continued course of criminal conduct after circumstances justifying such conduct cease to exist." *Myers v. State*, 153 So. 3d 581, 587 (¶20) (Miss. 2014).

4

¶8.    It is unclear whether the State argues that Taylor should have thrown the gun during the altercation or simply abandoned it somewhere once the coast was clear, but both ideas strike us as untenable. Turning to the elements of the necessity defense as articulated in *Flowers*, the risks of the gun discharging upon hitting the ground or being picked up and turned against Taylor before he could retreat to safety are "significant evils." *See id.* And "the harm caused was not disproportionate to the harm avoided" because, while the statute may technically criminalize it, there is little harm in a convicted felon, who has come into possession of a firearm through necessity, holding it briefly when required to ensure that it is safely transferred to a responsible person. *See United States v. Mooney*, 497 F.3d 397, 407 (4th Cir. 2007) (citing *United States v. Mason*, 233 F.3d 619, 625 (D.C. Cir. 2000)). A reasonable juror could likewise find that abandoning the gun in a public place or entrusting it to a complete stranger were not adequate alternatives to its brief continued possession. *See Flowers*, 51 So. 3d at 913 (¶7).

¶9.    As to the suggestions that Taylor should have just stayed put and called the police or gone somewhere else and given the gun to some other person, the Fourth Circuit's discussion in *Mooney* is instructive. Mooney took a gun from his ex-wife in self-defense and brought it to his place of employment, where he intended to call the police without interference from his ex-wife. *Mooney*, 497 F.3d at 400. The district court found that there was no potential necessity defense because Mooney left with the gun. *Id.* at 401. The Fourth Circuit reversed, holding that the necessity defense was available to Mooney because "[w]hen a

5

defendant pursues, immediately and without delay or detour, a reasonable course for handing over a gun to proper authorities after legally taking possession of it, we cannot fault him for not choosing a different reasonable course." *Id.* at 408.[2]  While Mooney said he intended to turn the firearm directly over to the police, the Fourth Circuit later explained that "a defendant's options for reasonable dispossession of a firearm may include turning the gun over to the authorities, but that is not the only option, and ultimately, the reasonableness of the defendant's course of conduct is a question for a jury." *United States v. Ricks*, 573 F.3d 198, 204 (4th Cir. 2009).  In *Ricks*, the court held that the justification defense was available where the defendant, fearing his roommate may return after once attempting to assault him with a firearm, picked the gun up, unloaded it, and concealed it under some clothes on a dresser used by its owner. *See id.*

¶10.    As to the particular question of whether Taylor should have given the gun to his girlfriend, he did not directly address that possibility in his testimony.  We recognize that necessity is an affirmative defense and Taylor, as its proponent, bore the burden of proof. *See Davis v. State*, 158 So. 3d 1190, 1195 (¶22) (Miss. Ct. App. 2015).  And we agree that a reasonable factfinder could conclude that Taylor's necessity defense failed on its merits as a result of his failure to address this possibility.  In *Stodghill v. State*, 892 So. 2d 236, 239

---

[2] The necessity test employed by the Fourth Circuit asks whether there was a "reasonable" alternative to possessing the gun, while ours uses the word "adequate," but we take them to have substantially the same meaning. *See Stodghill v. State*, 892 So. 2d 236, 238-39 (¶8) (Miss. 2005) (referring to a reasonableness standard in analyzing an asserted necessity defense).

(¶¶9-10) (Miss. 2005), the defendant claimed he drove under the influence of alcohol because of a medical emergency. On appeal, he argued that the circuit court, which tried the case without a jury, lacked a basis in the evidence to reject his justification defense. *Id.* The supreme court affirmed Stodghill's conviction because he failed to show that he had asked his daughter and son-in-law, who were present and demonstrably able to drive, to do it instead. *Id.*

¶11. It is important to note that the issue in *Stodghill* was whether the factfinder could reject the necessity defense, while today it is whether the necessity defense should have been submitted to the factfinder in the first place. As we said, when there is serious doubt as to the defense's viability, it should be submitted to the jury, and despite Taylor's failure to directly address the possibility of handing the weapon over to his girlfriend, we find that there is still a jury question based on the surrounding circumstances. *See Newell*, 49 So. 3d at 74 (¶20). Taylor testified that he fled to avoid another confrontation with Brent; he did not know where she had gone or, potentially, what she had gone to get. There were also reasons for the jury to conclude the girlfriend was unlikely to be able or willing to take the gun: she was twenty or twenty-one years of age and was caring for a five-month-old infant. She apparently ended her relationship with Taylor after the incident and left the state, and the jury could have accepted Brent's testimony that her niece was solidly on her side and that the confrontation had occurred because Taylor refused his girlfriend's demands that he leave—"the jury has the prerogative to accept or reject, in whole or part, the testimony of

7

any witness." *Smith v. State*, 925 So. 2d 825, 839 (¶33) (Miss. 2006). A reasonable juror could find that the exigencies of the situation outweighed the harm in Taylor's twenty-minute possession of the firearm. *See Mooney*, 497 F.3d at 407.

¶12. We conclude that the circuit court erred in refusing to instruct the jury on Taylor's necessity defense. As to the potential that this might be harmless error, the case was essentially a "he said, she said." Taylor and Brent were the only witnesses to the altercation to testify at trial, and the jury clearly rejected at least some of Brent's account, as it acquitted Taylor of robbery despite her direct and unambiguous testimony that one had occurred. The jury deliberated for some time over two days and even sent notes to the circuit court asking about the use of the word "unlawful" in the context of possession of a firearm in the indictment and jury instructions. The fourth and final note asked if there was "a lawful way for a felon to be in possession of a firearm" and whether the jury could "have any research material on state law"; Taylor was convicted after the court answered "no" to both questions. This is not a case where we can find refusing to submit the defense to be harmless error.

### 2. Impeachment with Prior Convictions

¶13. The trial court allowed Taylor to be impeached with the details of his prior convictions, pursuant to Mississippi Rule of Evidence 609(a)(1)(B), but without making on-the-record findings regarding the factors outlined in *Peterson v. State*, 518 So. 2d 632, 637-38 (Miss. 1987). The failure to make such findings on the record is reversible error in and of itself "in those cases where the accused's credibility was central to his defense or where

the evidence was hotly disputed." *See Jones v. State*, 702 So. 2d 419, 421-22 (¶¶15-17) (Miss. 1997).

¶14. We note, also, that the trial court found the prior convictions admissible for impeachment only, yet the prosecution clearly went beyond that purpose to suggest the prior convictions were evidence of Taylor's intent in taking the various objects belonging to Brent. While this particular issue should not recur on remand (as Taylor was acquitted of robbery and will not be retried for that offense), if the details of Taylor's prior convictions are found to be admissible on remand their use should be limited to credibility "and not to show a propensity . . . to have acted on the present occasion in conformity with the criminal character suggested by the previous conviction." *Id.* at 422 (¶17) (citation and internal quotation marks omitted).

### 3. Sentencing as Habitual Offender

¶15. Finally, Taylor contends that his indictment insufficiently charged him as a habitual offender and that the court lacked sufficient evidence to support a life sentence under Mississippi Code Annotated section 99-19-83 (Rev. 2015). These contentions are made for the first time on appeal, and so we decline to address them. If the issue were the sufficiency of the evidence as to the substantive offense (felon in possession of a firearm), we would be required to address it because double jeopardy would bar a retrial should the evidence have been insufficient for anything but an acquittal. *See Newell v. State*, 175 So. 3d 1260, 1267-68 (¶5) (Miss. 2015). But "the Double Jeopardy Clause does not preclude retrial on a prior

9

conviction allegation in the noncapital sentencing context." *Monge v. California*, 524 U.S.

721, 734 (1998). Since we are reversing Taylor's conviction and remanding for a new trial,

the circuit court can address these issues, should Taylor choose to raise them there.

¶16.    **REVERSED AND REMANDED.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, WILSON, GREENLEE, WESTBROOKS AND TINDELL, JJ., CONCUR.**