# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-KA-01647-COA

**PATTY ROBERTS**                                                                  **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                          **APPELLEE**

DATE OF JUDGMENT:                10/21/2019
TRIAL JUDGE:                         HON. BARRY W. FORD
COURT FROM WHICH APPEALED:  HOLMES COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:      JAMES H. POWELL III
ATTORNEY FOR APPELLEE:       OFFICE OF THE ATTORNEY GENERAL
                                     BY: BARBARA WAKELAND BYRD
DISTRICT ATTORNEY:              AKILLIE MALONE OLIVER
NATURE OF THE CASE:             CRIMINAL - FELONY
DISPOSITION:                    AFFIRMED - 05/11/2021
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE BARNES, C.J., GREENLEE AND WESTBROOKS, JJ.**

**GREENLEE, J., FOR THE COURT:**

¶1.     After a jury trial, Patty Roberts was convicted in the Holmes County Circuit Court of shooting into a dwelling. Patty was sentenced to five years in the custody of the Mississippi Department of Corrections with two years to serve and three years suspended. The court also ordered Patty to pay a $2,500 fine and $376 in court costs. On appeal, Patty lists as her assignments of error that the court erred by denying her (1) pre-trial motion to dismiss the indictment, (2) motions for a directed verdict of acquittal, (3) peremptory jury instruction, and (4) motion for judgment notwithstanding the verdict (JNOV) or alternatively to vacate the judgment and grant a new trial. However, the underlying basis for each of Patty's

assignments is that Mississippi Code Annotated section 97-37-29 (Rev. 2014) is unconstitutionally vague. Finding no reversible error, we affirm Patty's conviction and sentence.

## FACTS AND PROCEDURAL HISTORY

¶2. In 1976, Patty and Howard Roberts were married. At that time, Patty owned a home in Durant, Mississippi, which served as the couple's marital home until 1992. In 1992, the couple purchased another home that was also located in Durant. According to Patty, as their marriage progressed, Howard began having extramarital affairs, drank heavily, and became physically and verbally abusive.

¶3. On September 17, 2017, Patty separated from Howard and subsequently filed for a divorce. However, no decision was reached regarding the use or possession of the marital home. After their separation, Patty would periodically return to the home to retrieve personal items and check on her possessions. Based on her attorney's advice, Patty asked a law enforcement officer to accompany her on these visits. Eventually, law enforcement refused to go with Patty and instructed her to contact them only if a problem occurred.

¶4. In October 2018, Patty informed Howard that she was going to visit the home around 4:30 or 5:00 p.m. and requested that he leave the key under the mat. Howard informed Patty that he would not be home at that time. When Patty arrived at the home that evening, she found the driveway blocked with Howard's truck. Patty testified that she attempted to call Howard and to use her garage remote. Both actions were unsuccessful.

¶5. Patty testified that she had previously been told by both her attorney and officers that

2

she could break into the home if the need arose. According to Patty, an unknown officer informed her that she could shoot the lock or use her vehicle to get into the home if necessary. With no response from Howard, Patty proceeded to throw bricks at a glass door. However, the glass door remained intact. After several attempts to enter the home using bricks, Patty used her .38 caliber pistol to shoot through the glass.

¶6. Upon hearing the gunshots, Howard called the police, and informed them that someone was breaking into the home. Officers Patrick James and Matt Ward responded to the scene. Patty and Howard spoke with the officers, but it was not until the police overheard Patty's phone conversation with her sister while at the scene that they learned about the shots fired into the glass. Officers found bullet holes in the curtains and in one of the adjacent walls of the home. A search of Patty's vehicle and purse produced a .38 caliber revolver.

¶7. After considering the evidence presented at trial, the jury convicted Patty of shooting into a dwelling. On appeal, Patty claims that the court erred by denying her (1) pre-trial motion to dismiss the indictment, (2) motions for a directed verdict of acquittal, (3) peremptory jury instruction, and (4) motion for JNOV or alternatively to vacate the judgment and grant a new trial. Although Patty frames the issues as though she is challenging the sufficiency and weight of the evidence, she only argues that section 97-37-29 is unconstitutionally vague.

### DISCUSSION

### Whether section 97-37-29 is unconstitutionally vague.

¶8. Patty argues that section 97-37-29 is "void for vagueness" and violates the Fourth,

Fifth, and Fourteenth Amendments of the United States Constitution and Article III, sections 14 and 23 of the Mississippi Constitution.[1]

¶9.     Our supreme court has stated its scope of power in reviewing the interpretation of a statute's constitutionality. Specifically, it stated:

> Without doubt, our constitutional scheme contemplates the power of judicial review of legislative enactments; however, that power may be exercised affirmatively only where the legislation under review be found "in palpable conflict with some plain provision of the constitution." Statutes come before us clothed with a heavy presumption of constitutional validity. The party challenging the constitutionality of a statute is burdened with carrying his case beyond all reasonable doubt before this Court has authority to hold the statute, in whole or in part, of no force or effect. When a party invokes our power of judicial review, it behooves us to recall that the challenged act has been passed by legislators and approved by a governor sworn to uphold the selfsame constitution as are we.

*Trainer v. State*, 930 So. 2d 373, 377 (¶7) (Miss. 2006).

¶10.    Patty was convicted under section 97-37-29, which makes it a felony for anyone to "willfully and unlawfully shoot or discharge any pistol, shotgun, rifle or firearm of any nature or description into any dwelling house or any other building usually occupied by persons, whether actually occupied or not . . . ." Miss. Code Ann. § 97-37-29. Patty claims that the statute is unconstitutionally vague because it fails to give guidance as to the "application of enforcement of the statute under which [she] was charged." Specifically, Patty argues that

---

[1] The record does not reflect that this issue was raised before the circuit court. Generally, issues raised for the first time on appeal will not be addressed by the appellate court. *Young v. State*, 270 So. 3d 175, 175 (¶3) (Miss. Ct. App. 2018). However, "a conviction under an unconstitutional statute violates the Due Process Clause and is excepted from any procedural bar." *Pickett v. State*, 252 So. 3d 40, 48 (¶21) (Miss. Ct. App. 2018) (citing *Fulgham v. State*, 47 So. 3d 698, 700 (¶6) (Miss. 2010)). Therefore, we will address this issue.

4

(1) the statute lacks a mens rea element, (2) it violates her constitutional right to be secure in her home, and (3) under Mississippi Code Annotated section 27-33-17 (Rev. 2017),[2] she is classified as an owner and therefore, cannot be barred from utilizing a firearm to enter her home.

**A.      Whether section 97-37-29 is vague for lack of a mens rea element.**

¶11.    Patty argues that section 97-37-29 is vague because it does not provide a mens rea element. This is simply not true. Shooting into a dwelling under section 97-37-29 requires proof that the accused did "willfully and unlawfully shoot or discharge any . . . firearm of any nature or description into any dwelling house . . . usually occupied by persons, whether actually occupied or not . . . ." The statute under which Patty was charged uses the word "willfully," which we have classified as a specific mens rea requirement. *Roberson v. State*, 287 So. 3d 219, 231 (¶30) (Miss. Ct. App. 2017). Therefore, this issue is without merit.

---

[2] This section provides in relevant part:

> The meaning of the words "own," "owned," "ownership" and similar words, for the purpose of this article, shall be limited to real estate, and to title, as follows:

> (a) "Fee title," meaning inheritable title (whether by inheritance, gift or purchase), limited to only ownerships known as (i) "absolute" (freehold), or (ii) "tenancy for life" (life estate), or (iii) "tenancy in common," "joint tenancy," "joint ownership" and "common title"; the conditions of none of which may be restricted during the life of the owner as to possession, occupancy and use; and the words "joint owner," "joint tenant" or "joint tenancy" when used in this article shall include "tenant in common," tenancy in common" and "estate in common," unless a different meaning is clearly indicated by the context.

Miss. Code Ann. § 27-33-17(a).

**B. Whether Patty's prosecution under section 97-37-29 violated her constitutional due process rights.**

¶12. Patty also argues that section 97-37-29 infringes on her constitutional right "to be secure from arrest in her home" and therefore, violates her right to due process. To support her argument, Patty claims that because no exceptions exist under section 97-37-29, homeowners could be subjected to prosecution regardless of necessity or emergency circumstances.

¶13. To be convicted under section 97-37-29, a person must "willfully and unlawfully" shoot into a dwelling. The use of the term "unlawfully" suggests that instances exist where a person may lawfully shoot into a home such as in the event of an emergency.

¶14. While the defense of necessity applies in certain situations, it is inapplicable here. The defense of necessity provides that where "a person reasonably believes that he is in danger of physical harm" or "acts out of fear of imminent danger of death or serious bodily harm to others[,]" "he may be excused for some conduct which ordinarily would be criminal." *Stodghill v. State*, 892 So. 2d 236, 238 (¶8) (Miss. 2005) (internal quotation marks omitted.) In order to prove a defense of necessity, a person must show: "(1) the act charged was done to prevent a significant evil; (2) there was no adequate alternative; and (3) the harm caused was not disproportionate to the harm avoided." *Id*. It is important to note that the defense of necessity will fail if there is an adequate alternative. *Id*. at 239 (¶9).

¶15. In this case, Patty failed to meet the three essential elements for the defense of necessity. Not only was Patty not presented with a "significant evil," but an adequate alternative to entering the home was available. Patty could have contacted law enforcement

6

for additional help. She did not. Ultimately, it is for the jury to decide if a defendant acted out of necessity. *Davis v. State*, 158 So. 3d 1190, 1196 (¶23) (Miss. Ct. App. 2015). Here, the jury convicted Patty of shooting into a dwelling, confirming that her actions were not out of necessity. This issue is without merit.

### C. Whether section 97-37-29 is vague when read in conjunction with section 27-33-17.

¶16. Patty's final argument is that when section 27-33-17 and section 97-37-29 are read together, a homeowner of average intelligence would not know what conduct was prohibited. The question before us is whether section 97-37-29 is unconstitutional because it is vague regarding who may shoot into a residence. Patty relies on the premise that section 27-33-17 allows homeowners to enjoy "possession, occupancy and use" of their home, free of any limitations or restrictions. Specifically, Patty claims that section 97-37-29 is silent regarding whether a homeowner may shoot inside of their residence, while section 27-33-17 does not limit the ways she, as an owner, may gain access to her home.

¶17. "[A]n enactment is void for vagueness if its prohibitions are not clearly defined." *Trainer*, 930 So. 2d at 379 (¶11) (quoting *J & B Ent. Inc. v. City of Jackson*, 152 F.3d 362, 367 (5th Cir. 1998)). "To determine whether a statute is vague, we view the law from the standpoint of a person of ordinary intelligence." *Id*. (internal quotation mark omitted). The guiding legal principle is that an ordinance or regulation "cannot be enforced unless it provides clear notice and sufficient definite warning of that which is prohibited, and that which is allowed. The authorities for this proposition abound." *Id*. (quoting *Mayor & Bd. of Aldermen, City of Clinton v. Welch*, 888 So. 2d 416, 421 (¶26) (Miss. 2004)). The

7

"restriction[s] must be reasonably clear, enabling a citizen to understand what is allowed, and what is not." *Welch*, 888 So. 2d at 420 (¶21).

¶18.    Patty invites this Court to consider section 97-37-29 in conjunction with section 27-33-17 and asks us to conclude that section 97-37-29 is unconstitutional in its application on the ground of vagueness. Patty argues that a civil statute that defines ownership and provides for peaceable use, occupancy, and possession in relation to other civil claims overrides a criminal statute. It simply does not. We decline Patty's invitation and instead determine that the answer to the issue is clearly found in section 97-37-29. Therefore, no review is required in regard to section 27-33-17 in conjunction with section 97-37-29.

¶19.    Instead, we must determine if the statute provides "clear notice and sufficiently definite warning of that which is prohibited, and that which is allowed." *Trainer*, 930 So. 2d at 379 (¶11). Section 97-37-29 need not address homeowners specifically since section 97-37-29 applies to "any person" who shoots into "any dwelling house . . . ." The Legislature has the exclusive power to create and define criminal offenses. *Wilcher v. State*, 227 So. 3d 890, 895 (¶28) (Miss. 2017) (citing *State v. Russell*, 358 So. 2d 409, 411 (Miss. 1978)). Unless that Legislative power is limited by constitutional provisions, the Legislature has the power "to define and punish any act as criminal." *Id*. (citing *Brawner v. State*, 947 So. 2d 254, 268 (¶42) (Miss. 2006)). The opposing party must prove that a statute is unconstitutional beyond a reasonable doubt. *Id*. at 896 (¶28).

¶20.    If "persons of common intelligence must guess at its meaning and differ as to its application[,]" a statute is deemed unconstitutionally vague, thus violating due process. *Id*.

8

at 896 (¶29) (internal quotation mark omitted). A statute is also "void for vagueness" if it "encourages arbitrary and erratic arrests and convictions." *Id*. "It is well established that vagueness challenges that do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand." *Pickett*, 252 So. 3d at 48 (¶23) (quoting *Hill v. State*, 853 So. 2d 100, 103 (¶11) (Miss. 2003)).

¶21. Here, we analyze section 97-37-29 under the facts present since that statute does not implicate any First Amendment freedoms. Patty admitted, and Officer Patrick James' testimony and body camera corroborated, that Patty had shot several times from the patio into the home. Upon further investigation, officers found bullet holes in the curtains and in one of the home's adjacent walls. A search of Patty's vehicle and purse produced a .38 caliber revolver. Clearly, section 97-37-29 was intended to prohibit the actions committed by Patty. No person of common intelligence would have to guess at what actions were restricted under section 97-37-29, nor would its application differ. Furthermore, Officer James explained that had Patty only thrown the brick through the glass, he would not have arrested her. However, Patty shooting into the home "changed the whole situation." Officer James' comments show that the statute does not encourage arbitrary and erratic arrests. Thus, the statute is not unconstitutionally vague.

## CONCLUSION

¶22. For the above reasons, we find that section 97-37-29 is not unconstitutionally vague. Therefore, we affirm Patty's conviction and sentence.

¶23. **AFFIRMED.**

9

**BARNES, C.J., CARLTON, P.J., WESTBROOKS, McDONALD, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR. WILSON, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**