# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-KA-00458-COA

**RODNEY CARTER A/K/A RODNEY D. CARTER**                                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                                          **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 11/30/2015 |
| TRIAL JUDGE: | HON. WILLIAM E. CHAPMAN III |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: BENJAMIN ALLEN SUBER |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: JASON L. DAVIS |
| DISTRICT ATTORNEY: | MICHAEL GUEST |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 09/05/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE LEE, C.J., BARNES AND CARLTON, JJ.

### BARNES, J., FOR THE COURT:

¶1.    At approximately 11 p.m. on January 10, 2015, Madison County Sheriff's Deputy Sam Howard observed a car that did not have a light illuminating its license plate. The car and the deputy's vehicle were both traveling west on Highway 463 in Madison but were in different lanes when they came to a stop at a red light. Once the light turned green, Deputy Howard accelerated slowly in order to get a better look at the car's license plate, but the driver, Rodney Carter, slowed the car to a near stop, obstructing traffic behind him. Because of this suspicious behavior, Deputy Howard followed Carter as he entered the exit ramp for Interstate 55 southbound and activated his blue lights and siren. Carter initially applied his

brakes, as if to stop, but then he accelerated, speeding away from the deputy's car. Deputy Howard notified his dispatcher that he was engaged in pursuit. During the pursuit, Carter maintained speeds between 88-124 miles per hour (mph), well over the posted speed limit. He was weaving in and out of traffic and occasionally driving on the shoulder of the road. When Carter reached the intersection of Interstate 220 and Highway 49, he continued speeding north on Highway 49. After a few miles, Trooper Wade Zimmerman of the Mississippi Highway Patrol put out spike strips to stop Carter's vehicle, and the car came to a slow stop. Before Carter stopped, Deputy Howard observed an object being thrown from the passenger side of the car, causing a spark.

¶2.    Carter was agitated, telling law enforcement he had just picked up his wife from work and was on his way to the hospital because he was having a severe asthma attack. Deputy Howard later testified that Carter informed him he was having trouble breathing; so Deputy Howard advised Carter to sit up and quit yelling so he could "relax and breathe easier," but Carter "insisted on trying to slump over . . . and continued yelling that [he] could not breathe." Carter was examined at the scene by emergency medical personnel, and then was arrested and taken into custody. A gun was recovered near the scene the following day.

¶3.    Carter was indicted for felony evasion and possession of a firearm by a felon.[1] A trial was held on October 28, 2015. Upset with his appointed counsel's legal advice, Carter insisted on self-representation, but the judge ordered appointed counsel to remain and assist Carter if needed. Carter was convicted of Count One, felony evasion; he was acquitted of

---

[1] He had a prior armed robbery conviction in 2007 for which he served two years.

Count Two, possession of a firearm by a felon. He was sentenced to five years in the custody of the Mississippi Department of Corrections (MDOC).

¶4. Carter filed a motion for a new trial or, in the alternative, a judgment notwithstanding the verdict, claiming the verdict was against the overwhelming weight of the evidence. The trial court denied the motion, and he now appeals.[2] An appellant's brief was filed on Carter's behalf by the Office of the State Public Defender, but Carter has also filed a supplemental pro se brief, raising additional issues, as well as a pro se reply brief.[3] Finding no error, we affirm the judgment.

## DISCUSSION

### I. Whether the verdict was against the overwhelming weight of the evidence.

¶5. Carter argues the trial court erred in denying his motion for a new trial, claiming that the evidence did not show that he was operating a vehicle in a reckless manner with indifference to human life. Carter insists that he was merely trying to get to the nearest hospital due to a medical emergency, and he thought the deputy was escorting him. He also argues the State failed to produce any evidence that he was not in need of medical attention when he was arrested.

¶6. In reviewing a trial court's denial of a motion for a new trial, we "will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to

---

[2] Carter's appeal was dismissed for failure to pay costs, but it was reinstated by the trial judge due to trial counsel's unfamiliarity with the process of substituting the Office of the State Public Defender, Indigent Appeals Division, to represent Carter on appeal.

[3] *See* M.R.A.P. 28(b).

stand would sanction an unconscionable injustice." *Bush v. State,* 895 So. 2d 836, 844 (¶18) (Miss. 2005). Evidence is weighed in the light most favorable to the verdict. *Id.* Carter was charged with felony evasion. Mississippi Code Annotated section 97-9-72(1)-(2) (Rev. 2015) provides:

> The driver of a motor vehicle who is given a visible or audible signal by a law enforcement officer by hand, voice, emergency light or siren directing the driver to bring his motor vehicle to a stop when such signal is given by a law enforcement officer acting in the lawful performance of duty who has a reasonable suspicion to believe that the driver in question has committed a crime, and who willfully fails to obey such direction shall be guilty of a misdemeanor[.]

> Any person who is guilty of violating subsection (1) of this section by operating a motor vehicle in such a manner as to indicate a reckless or willful disregard for the safety of persons or property, or who so operates a motor vehicle in a manner manifesting extreme indifference to the value of human life, shall be guilty of a felony[.]

Deputy Howard testified that when he activated his lights and siren, Carter sped off and began "driving at reckless speeds moving in and out of traffic, at times passing motorists on the shoulder of the roadway." The evidence showed that Carter traveled approximately twenty-two miles in thirteen minutes. Deputy Howard said when Carter reached Highway 49, he was "still driving recklessly, still passing vehicles, showing no regard for their safety." A dash-cam video was shown to the jury that supported the deputy's testimony. In the video, the jury could see Carter speeding down the freeway at high speeds, weaving in and out of traffic.

¶7. Carter acknowledged that he saw the deputy turn on his lights; he just contends that he "never anticipated on him chasing me at all . . . because I did not do anything wrong." He

claims he was speeding because he was having a medical emergency (asthma attack), but he was stopped at a traffic light when the deputy first observed him and only began driving in a reckless manner after Deputy Howard began following him. When Carter cross-examined Deputy Howard, the officer replied:

> Well, Mr. Carter, I was behind you several minutes prior to that. You stopped at a red light, and you saw a marked patrol car next to you. You gave me no sign, indication, acknowledgment that I was there, knowing that I could have rendered you aid or had AMR or fire service dispatched to you much quicker than your decision to go in the other direction of five or six hospitals.
>
> . . . .
>
> [H]ad you stopped when I first activated my lights and siren and you notified me that you needed to receive medical attention, we would have stopped right there.

Carter's wife testified that he was having an asthma attack and disclaimed they were running from the police, but she also said that she did not know why he did not stop for law enforcement and did not know where Carter was going. Lastly, we note that medical personnel examined Carter at the scene of the arrest, and he did not require additional treatment at a hospital.

¶8. "When this Court analyzes a jury's verdict to determine whether it goes against the overwhelming weight of the evidence, we must keep in mind that the jury is the ultimate finder of fact." *Langston v. State*, 791 So. 2d 273, 280 (¶14) (Miss. Ct. App. 2001). Thus, it is the "sole province of the jury" to evaluate the credibility of each witness. *Blackwell v. State*, 744 So. 2d 359, 364 (¶18) (Miss. Ct. App. 1999) (citing *Johnson v. State,* 642 So. 2d 924, 928 (Miss. 1994)). "In determining a witness's credibility, jurors are allowed latitude

in deriving facts from each witness's assertions, and jurors must determine the value of the conflicting testimony introduced during the trial." *Flowers v. State*, 144 So. 3d 188, 196 (¶26) (Miss. Ct. App. 2014). Accepting as true the evidence which supports the verdict, we cannot find that the trial judge abused his discretion in denying Carter's motion for a new trial.

> **II.** **Whether the trial court erred in denying Carter's defense instruction on "necessity and duress."**

¶9.     Carter asserts that the trial court should have granted him an instruction on "necessity and duress." Jury instruction D-9, which was drafted and handwritten by Carter, stated: "I[,] Rodney Carter[,] Request Jury on Necessity defense D[ue] to Duress – Medical Emergency." The judge found that it was a peremptory instruction and refused it.

¶10.    "A defendant is entitled to have the trial court give jury instructions that present his theory of the case; however, the court may deny an instruction that misstates the law, is covered elsewhere in the instructions, or is not supported by the evidence." *Graham v. State*, 967 So. 2d 670, 674 (¶15) (Miss. Ct. App. 2007) (citing *Ladnier v. State,* 878 So. 2d 926, 931 (¶20) (Miss. 2004)). The Mississippi Supreme Court has held:

> The defense of necessity is "available where the defendant reasonably acts out of fear of 'imminent danger of death or serious bodily harm' to others." *Stodghill v. State*, 892 So. 2d 236, 238 [(¶8)] (Miss. 2005). The three components to the defense of necessity are[:]  (1) the act charged was done to prevent a significant evil, (2) there was no adequate alternative, and (3) the harm caused was not disproportionate to the harm avoided. *Id.*

*Davis v. State*, 18 So. 3d 842, 849 (¶19) (Miss. 2009).

¶11.    In *Stodghill*, 892 So. 2d at 238-40 (¶¶7, 12), we affirmed a trial court's determination

6

that the defendant could not use the affirmative defense of necessity after he drove under the influence of alcohol to take a sick friend to the hospital, as there were "reasonable alternatives" available to him. We similarly conclude that Jury Instruction D-9 was not supported by the evidence in this case. Carter was not under an unlawful threat, and he had "reasonable alternatives" to driving himself, at speeds exceeding 100 mph, to the hospital. His wife was in the car; she could have driven him. Further, as noted by Deputy Howard in his testimony, Carter could have alerted Deputy Howard, who was sitting at the light next to Carter, to contact an ambulance. Moreover, we find the potential harm of Carter's reckless driving at excessive speeds over a span of twenty-two miles was disproportionate to the harm avoided – his asthma episode.

¶12.    Accordingly, we find the trial court's refusal of Carter's jury instruction on the defense of necessity was not in error.

### III.    Whether the State produced false evidence in violation of Mississippi Rule of Evidence 609.

¶13.    At trial, Carter refused to stipulate that he had a prior felony conviction; so the State moved to introduce into evidence a certified judgment of conviction showing Carter was convicted of armed robbery under Mississippi Code Annotated section 97-3-79 (Rev. 2006) on October 22, 2007. Carter did not object to the admission of this evidence. However, later at trial, he submitted a MDOC discharge certificate to rebut the evidence that he was convicted of armed robbery. The court ruled the MDOC certificate inadmissible, as it was not a self-authenticating document.

¶14.    Carter contends that the trial court erred in allowing the State to introduce the

7

evidence of his prior conviction, arguing the evidence was "false" and prejudiced the jury. This argument is waived as Carter did not object to the admission of the judgment of conviction at trial. "[A] defendant's failure to contemporaneously object to the admission of evidence at trial, as required by Mississippi Rule of Evidence 103, effectively waives the issue on appeal." *Butler v. State*, 16 So. 3d 751, 755 (¶19) (Miss. Ct. App. 2009). Regardless, as Carter has provided no evidence that the certified judgment of conviction submitted by the State was "false," we find no merit to this claim.[4]

**IV.    Whether law enforcement had probable cause to arrest Carter.**

¶15.    Carter claims Deputy Howard did not have probable cause to arrest him after he was informed of Carter's emergent medical issue. He argues:

> Deputy Sam Howard may not ignore conclusively established evidence of existence[] of an affirmative defense of necessity[;] if an officer has knowledge of facts and circumstances which establish an affirmative defense[,] he or she lacks probable cause to make a traditional arrest even when the facts and circumstances establish that the person meets all elements of the offense.

Essentially, Carter is reiterating his claim regarding the affirmative defense of necessity, which we have already found to be inapplicable to the instant case.

¶16.    Furthermore, "the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Goff v. State*, 14 So. 3d 625, 641 (¶48) (Miss. 2009) (quoting *Whren v. United States,* 517 U.S. 806, 810 (1996)). "To effect an arrest for a felony, either with or without a warrant, a police officer must have (1)

---

[4] We further note that Carter was acquitted of the charge for possession of a firearm by a felon; so this claim is not relevant to the current appeal, which only involves his felony evasion conviction.

reasonable cause to believe a felony has been committed; and, (2) reasonable cause to believe that the person proposed to be arrested is the one who committed it." *Henry v. State*, 486 So. 2d 1209, 1212 (Miss. 1986). Deputy Howard testified that he witnessed Carter commit two traffic violations – (1) his license plate was not illuminated; and (2) he was obstructing traffic. Additionally, Deputy Howard saw Carter fail to stop when he activated his lights, exceed the posted speed limit during pursuit, and drive on the shoulder of the road. Therefore, we find Carter's claim that Deputy Howard lacked probable cause to arrest him to be without merit.

**V. Whether Carter was denied effective assistance of counsel.**

¶17. When discussing Carter's wish for self-representation at trial, his attorney informed the trial court that he had counseled Carter that the defenses of necessity and duress were not "legitimate defenses" in this instance. When Carter later asked for his instruction on "necessary under duress," as he termed it, the attorney's comment to the trial court was: "Your Honor, I'm not familiar with that type of instruction, so I wasn't sure how to construct something like that." On appeal, Carter argues that trial counsel's failure to help him craft a jury instruction on "necessity under duress" constituted ineffective assistance of counsel.

¶18. Since we are limited to the trial court's record, it is unusual for an appellate court to address a claim of ineffective assistance of counsel on direct appeal, finding it more appropriate for a motion for post-conviction relief. *Sims v. State*, 213 So. 3d 90, 97 (¶24) (Miss. Ct. App. 2016). However, in this case, as we have found no basis for an instruction on the defense of necessity, we can likewise find no merit to Carter's claim of ineffective

9

assistance of counsel regarding the failure to submit such an instruction.

## CONCLUSION

¶19. Finding the trial court's denial of Carter's motion for a new trial was not an abuse of discretion, and his remaining claims are meritless, we affirm Carter's conviction for felony evasion and sentence of five years in the custody of the MDOC.

¶20. **AFFIRMED.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, CARLTON, FAIR, WILSON, GREENLEE AND WESTBROOKS, JJ., CONCUR.**