# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-KA-01067-COA

**JEREMIAH DANIELS A/K/A JERMIAH**           **APPELLANT**
**DANIELS A/K/A JEREMIAH LELAND DANIELS**

**v.**

**STATE OF MISSISSIPPI**           **APPELLEE**

DATE OF JUDGMENT:        08/20/2021
TRIAL JUDGE:        HON. KENT E. SMITH
COURT FROM WHICH APPEALED:        TIPPAH COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:        OFFICE OF STATE PUBLIC DEFENDER
        BY: GEORGE T. HOLMES
ATTORNEY FOR APPELLEE:        OFFICE OF THE ATTORNEY GENERAL
        BY:  ALEXANDRA LEBRON
DISTRICT ATTORNEY:        BENJAMIN F. CREEKMORE
NATURE OF THE CASE:        CRIMINAL - FELONY
DISPOSITION:        AFFIRMED - 10/11/2022
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE CARLTON, P.J., WESTBROOKS AND SMITH, JJ.**

**CARLTON, P.J., FOR THE COURT:**

¶1.	Following a jury trial in the Tippah County Circuit Court, Jeremiah Daniels was convicted of two counts of armed robbery, two counts of attempted aggravated assault, one count of house burglary, and one count of grand larceny, all arising out of events occurring on July 27, 2020, in Tippah County.  Other criminal charges, including a felon-in-possession-of-a-firearm charge, were brought against Daniels in Benton County relating to the police pursuit that ensued the same morning when Daniels "took off" into Benton County in a gold Lexus he had taken in Tippah County.

¶2. With respect to his Tippah County convictions, the trial court sentenced Daniels as a non-violent habitual offender to concurrently serve the following terms: thirty years for each count of armed robbery, twenty years for each count of attempted aggravated assault, twenty-five years for burglary of a dwelling, and five years for grand larceny.

¶3. On appeal, Daniels asserts that the trial court erred by (1) informing the jury that Daniels was charged as a habitual offender and (2) allowing evidence to be admitted at trial of Daniels's Benton County charges (particularly the felon-in-possession-of-a-firearm charge) and related testimony. For the reasons addressed below, we affirm Daniels's convictions and sentences.

**STATEMENT OF FACTS AND PROCEDURAL HISTORY**

¶4. Following a high-speed police pursuit into Benton County from Tippah County on July 27, 2020, Daniels was apprehended in Benton County when the gold Lexus he was driving broke down. With respect to events occurring earlier that morning in Tippah County, a Tippah County grand jury indicted Daniels for two counts of robbery with a deadly weapon under Mississippi Code Annotated section 97-3-79 (Rev. 2020) (Counts I and II), two counts of attempted aggravated assault under section 97-3-7(2)(a) (Rev. 2020) (Counts III and IV), one count of burglary of a dwelling under Mississippi Code Annotated section 97-17-23 (Rev. 2020) (Count V), and one count of grand larceny under section 97-17-41 (Rev. 2020) (Count VI). Daniels was indicted as a non-violent habitual offender for each count under Mississippi Code Annotated section 99-19-81 (Rev. 2020). Daniels's conduct during the

police pursuit in Benton County led to separate criminal charges in that county, including felony evasion, simple assault on a law enforcement officer, and being a felon in possession of a firearm.

¶5. Before trial, the Tippah County Circuit Court ordered Daniels to undergo a mental-health evaluation and a *M'Naghten*[1] analysis. Dr. Dominic Galvez, a licensed psychologist at Mississippi State Hospital, performed the evaluations. Daniels's competency hearing was held on August 16, 2021. At that hearing, Dr. Galvez testified "to a reasonable degree of psychological certainty" that Daniels was competent to stand trial. The trial court agreed and found Daniels competent to stand trial based on Dr. Galvez's testimony, a thorough review of the forensic report that was admitted into evidence, and the fact that Daniels did not present an expert witness to rebut Dr. Galvez's opinion.

¶6. The trial court also addressed two evidentiary motions the State had filed. First, the State had filed a motion to allow into evidence Daniels's Benton County charges because they were interrelated with the Tippah County events and admissible under Mississippi Rule of Evidence 404(b)(2) as proof of "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." The trial court granted this motion. Details of its ruling are addressed in context below.

¶7. A couple of days after the State filed its first evidentiary motion, Daniels served a

---

[1] *M'Naghten's Case*, 8 Eng. Rep. 718 (1843). Mississippi applies the *M'Naghten* test "in criminal cases to determine whether a defendant was legally insane at the time of the crime." *Williams v. State*, 291 So. 3d 418, 431 (¶44) (Miss. Ct. App. 2020).

"Notice of Intent to Offer Insanity Defense." Daniels presented an insanity defense at trial. After the notice was filed, the State filed a second evidentiary motion seeking authority to allow into evidence the "details of [Daniels's] prior criminal history and use of controlled substances and intoxicating liquors on and prior to July 27, 2020" and "all evidence to the issue of [Daniels's] sanity." As detailed below, the trial court granted the motion in part, but the court held in abeyance its ruling on the admissibility of Daniels's criminal history from Texas.

¶8. Trial began on August 18, 2021. The trial court introduced the case to the prospective jurors with a reading of Daniels's charges at the beginning of voir dire. In the course of doing so, the trial judge stated, "He's been charged in the indictment as a habitual offender." Voir dire continued, and challenges for cause and peremptory challenges were made. After the jury had been selected and sworn, the defense moved for a mistrial based on the trial court's habitual-offender reference before the jury panel. The trial court denied that motion. Its ruling on the mistrial motion is addressed in context below.

¶9. After opening statements, the State presented its case-in-chief.

### I. The State's Case-in-Chief

¶10. Greg Duncan testified that he was outside hanging a light for Polly James on July 27, 2020, when he saw Daniels "beating" on the door of an empty shed on the property. Duncan climbed down the ladder to see what was going on, and Daniels asked to use his cell phone. Duncan obliged. After that, Daniels asked if he could pull his truck around into the shade

4

because his dog was inside. Duncan told him that he could. Daniels then asked Duncan if he had a gun. Duncan said no, even though he knew there was a shotgun inside Polly's home. As Daniels walked toward his truck, Duncan ran inside the house, grabbed the 12-gauge shotgun, and told Polly to call the police. Daniels pulled his white Ford pick-up truck with a Texas license plate around to the shade. Daniels approached the house with his gun, but he eventually left before police arrived. On cross-examination, Duncan said that Daniels told him that "the mafia was chasing him." Duncan also said that Daniels appeared to be "on some kind of a drug" by the way he was acting: he was nervous and shaking.

### A. Counts V and VI: Burglary of a Dwelling and Grand Larceny[2]

¶11. Daniels's next stop was just down the street at the home of Polly's neighbor Debbie Jackson. Jackson had worked the previous night and was asleep when Daniels arrived. Daniels broke into Jackson's house by smashing the window of her kitchen door. The sound of the crash startled Jackson awake, but she assumed a painting fell and went back to sleep. Daniels proceeded through the house and into the garage where Jackson kept her gold Lexus. He stole the Lexus and left behind his white Ford pick-up truck with the Texas license plate in the front seat.

### B. Counts I and II: Armed Robberies of Ryan and Jake Freeman

---

[2] The counts in the indictment are not in chronological order. For clarity, we address the charges as the events occurred.

¶12.    Daniels drove Jackson's car to the Freeman farm where nineteen-year-old Ryan Freeman and his eleven-year-old brother, Jake Freeman, were preparing for work. Ryan saw the gold Lexus come "flying in the driveway" and pull up behind his grandfather's house. He walked to the house and saw Daniels trying to break inside. When Daniels saw Ryan, Daniels told him that people were after him (Daniels). Daniels then walked back to the Lexus and returned with a gun. Daniels aimed the gun at the boys, ordered them to lie on the ground, and demanded they give him their phones and wallets. The boys did as they were told, and Daniels left, but not before Ryan got the Lexus's license plate number. As soon as they were sure Daniels was gone, the boys ran to their neighbor's house to report the robbery. The license plate number that Ryan gave to the police linked the vehicle to Debbie Jackson.

### C.    Counts III and IV: Attempted Aggravated Assaults of Dustin Musselman and Pascual Ramirez

¶13.    Dustin Musselman and Pascual Ramirez testified that they were on a work trip from Alabama to clean chicken houses at a nearby farm. Musselman was driving his employer's van that day, and Ramirez was in the passenger seat. As they neared their destination at about "9:00, 9:30" in the morning, Musselman saw a vehicle "flying up behind [them]" in his rearview mirror. Musselman first thought the driver was trying to pass them and did not give it much thought. Then, Ramirez began screaming. Musselman looked over and "all [he saw] was the barrel of the gun sticking out[.]" Musselman would later identify the gold Lexus in a photo admitted into evidence as the vehicle that the gunman was driving at the time. Musselman also would later identify the work van he was in and bullet holes in the van

6

following the incident.  Ramirez would testify and corroborate Musselman's testimony.

### D.    The Investigation and Arrest

¶14.    Investigator Josh Bateman for the Tippah County Sheriff's Department testified the tag number that Ryan Freeman reported was traced back to Jackson. When deputies went to Jackson's home, they discovered the white Ford pick-up truck with a Texas tag inside, which was associated with the occurrence described by Duncan.  The deputies then realized these events were all related.

¶15.    Deputy Gerald Lollar of the Benton County Sheriff's Department testified that he received word that the suspect of several crimes committed in Tippah County that morning was headed in his direction.  The deputy drove to where the suspect was believed to be traveling and waited for him to arrive.  Soon, Daniels pulled up beside Deputy Lollar, but Daniels "took off" into Benton County when the deputy told him to get out of the car.  The deputy chased Daniels for twelve to fourteen miles, going speeds of over 100 miles per hour. Deputy Lollar followed Daniels onto a bridge that was closed for construction.  The impact of the unfinished bridge caused the deputy to wreck his car and "bust[]" his head.  Deputy Lollar testified that Daniels then pulled out a rifle and pointed it at him.  Deputy Lollar testified that Daniels did not look normal, his eyes were wide open, and he looked "high" on narcotics.  Deputy Lollar would later testify that Daniels looked like he was coming down off something for several days after the arrest.

¶16.    Shortly after Deputy Lollar's encounter with Daniels, highway patrol officers and

7

other law enforcement joined the pursuit. The chase ended when the Lexus broke down in the middle of Interstate 22 in Benton County. A "large steam cloud" came from the car, and Daniels "started throwing out weapons and surrendered[.]" Daniels was taken to the Benton County jail.

¶17. Investigator Russ Gordon of the Mississippi Bureau of Investigation (MBI) arrived at the scene and testified that he photographed the interior and exterior of the Lexus, as well as the rifle that had been discarded onto the roadway. He also collected a bag labeled "Euphoria Kratom" and another bag labeled "OPMS Silver, Optimized Plant Medicated Solutions." The Benton County Sheriff's Department charged Daniels with felony fleeing, felon in possession of a firearm, and assault of an officer.

¶18. Tippah County Investigator Josh Bateman interviewed Daniels on July 29, 2020. The recording of that interview was played to the jury without objection. In the recorded interview, Daniels told the investigator that he was on parole in Cherokee County, Texas, and he gave the name of his parole officer. Daniels said he had served time in a Texas prison from 2008 to 2012 for felony burglary and previously had been in prison for another felony from 2005 to 2007. Daniels also said that he had "signed over power of attorney" to his sister "the last time I was in jail." He explained that he did not do so for any mental-capacity reasons but so that his sister could take care of his business while he was in jail. In the course of the recorded interview, Daniels did not admit that he committed any of the charged conduct in this case; rather, he maintained that he had taken "a handful of" Kratom, and he

did not remember the events except for realizing that law enforcement officers were behind him in Benton County, resulting in his surrendering.[3]

¶19.    The State rested its case-in-chief. At that time, in addition to asserting other motions not at issue in this appeal, the defense renewed its motion for a mistrial "regarding the Court's reading of the indictment at the voir dire introduction proceedings and stating that [Daniels] was indicted as a habitual offender." The trial court denied Daniels's renewed motion for a mistrial.  Further details regarding its ruling are set forth below.

## II.    The Defense's Case

¶20.    The defense then presented its case, beginning with Benton County Deputy Mark Taylor as its first witness.  Deputy Taylor had been involved in Daniels's pursuit, and he was the deputy who transported Daniels to the Benton County jail.  He testified that on the way to the jail, Daniels "was fine," but at the jail a fight erupted between Daniels and a jailer; at that time Daniels was "belligerent and crazy," and it took several officers to wrestle him under control.

¶21.    The next defense witness was Daniels's half-sister Dawn Daniels. She described Daniels as a good person who struggled with drug abuse and suffered from broad mood

---

[3] After Daniels's recorded interview was played for the jury, the prosecutor asked Investigator Bateman what Daniels had told him about the offenses Daniels had committed in Texas.  The trial judge requested that counsel approach the bench and then told the prosecutor to "be careful" with this line of questioning.  The prosecutor explained that the information about the Texas convictions "[is] already in.  The interview is admitted." The trial judge responded, "Okay. And it's already in.  If [the defense] makes a cumulative objection, then I'm going to sustain it."  The prosecutor stated, "Understood."

swings. She also described Daniels as paranoid and said that there were times when Daniels thought people were after him and that he would see people in nearby woods. Dawn testified that Daniels was in a serious automobile accident in high school in which he broke his neck and was on pain medication for a long time. She testified that after the accident, Daniels's mood swings became more frequent and that when Daniels would go into a depression, he would "self-medicate." On cross-examination, Dawn said Daniels knew right from wrong when he was not hallucinating or psychotic, but Daniels's charged conduct was a result of him becoming delusional and because he was hallucinating about seeing people out to do him harm.

¶22. Daniels also testified. He said that he became addicted to Xanax after the high-school car accident, but by the summer of 2020, he considered himself rehabilitated. However, when he became unemployed due to the COVID-19 pandemic, he became involved with conspiracy theories on the Internet. In the weeks before coming to Mississippi, he testified that strangers had come to his door and that his landlord suggested he get a gun. Right before he left Texas, he noticed that when he was driving, everyone who drove by him stared at him using "intimidation type tactics." He decided to leave his home in Texas to visit a cousin in Atlanta. While there, he saw civilian and government cars following him. Being unable to locate his cousin, he left Atlanta to head to California and ended up in North Mississippi. Daniels said that he had been using Kratom for about a year since he stopped using his anti-anxiety medicine, Klonopin, based on the advice of a friend.

¶23. Regarding his actions in Mississippi, Daniels testified that his actions were not intended to harm anyone; he was in a heightened mental state and could not think rationally. Daniels said he remembered the events in Mississippi, but not clearly. He identified and claimed ownership of the rifle that was retrieved by MBI Investigator Gordon in Benton County at the scene when Daniels surrendered. Daniels testified, "[T]hat's definitely my gun, yes, sir. That's the one I purchased after the man entered my home" in Texas. Daniels testified about the specific events that occurred that day, maintaining that he did not intend to hurt anyone but rather that he was insane, and said his irrational fear caused him to lose all touch with reality. He said that when the officers stopped him, he "realized that it was all real at that moment" and felt that it was best to end the situation.

¶24. The defense rested at the conclusion of Daniels's testimony.

### III.    The State's Rebuttal

¶25. The State called Dr. Galvez as a rebuttal witness following the defense's case. Dr. Galvez testified "to a reasonable degree of psychological certainty" that, at the times of the crimes, "Daniels was not suffering from a mental illness that would impair his ability to understand the nature, quality or wrongfulness of his alleged acts" and that "he was able to appreciate the wrongfulness of his actions." As for the Kratom, Dr. Galvez said that Daniels's behavior could be explained by his use of Kratom or possibly another substance such as methamphetamine. Dr. Galvez said that Daniels's alleged conduct "could be best explained by substance use, not due to a serious mental illness" and that he did not present

11

symptoms of psychosis or schizophrenia. The actual effects of Kratom, Dr. Galvez said, depend on the individual and the dosage amount. He testified that prolonged use coupled with higher doses can result in "symptoms mimicking psychosis, specifically delusions, hallucinations and paranoia." The bases for Dr. Galvez's opinions and other details regarding his testimony are addressed below.

## IV. Jury Verdict, Sentencing, and Post-trial Motions

¶26. At the close of all evidence, the defense renewed its motion for a directed verdict and for a mistrial, which the trial court denied. The jury found Daniels guilty of all six counts against him. The trial court sentenced Daniels as non-violent habitual offender as follows: thirty years for each count of armed robbery (Counts I and II), twenty years for each count of attempted aggravated assault (Counts III and IV), twenty-five years for burglary of a dwelling (Count V), and five years for grand larceny (Count VI). The trial court ordered that each of these sentences be served concurrently "in an institution to be designated by the Mississippi Department of Corrections." Daniels unsuccessfully moved for judgment notwithstanding the verdict or a new trial. Daniels appeals.

## DISCUSSION[4]

¶27. Daniels asserts that he is entitled to a new trial because "[r]eferences to, and evidence of, [his] prior convictions were irrelevant to all issues and highly prejudicial which rendered

---

[4] The applicable standards of review for the issues addressed are discussed in context below.

12

Daniels's trial unfair." In particular, Daniels asserts "that the trial court erred by informing the jury that Daniels was charged as a habitual offender and erred further by allowing into evidence of his prior convictions through reference to the Benton County felon in possession charge." We find that these assertions are without merit for the reasons addressed below. We begin our analysis by examining the proceedings in the trial court relating to these issues.

I. **The Trial Court Proceedings Relating to the Admissibility of Daniels's Benton County Charges and Prior Convictions and Proceedings Relating to the Trial Judge's Reference to Daniels's Habitual Offender Status**

A. **The State's Pretrial Evidentiary Motions**

¶28. As noted above, the State filed a pretrial motion seeking permission to introduce evidence about Daniels's apprehension, arrest, and resulting felony charges in Benton County that arose out of the pursuit that ensued there following Daniels's activities in Tippah County. The Benton County criminal charges included felony evasion, simple assault on a law enforcement officer, and felon in possession of a firearm. After Daniels filed his notice of insanity defense, the State filed another motion seeking permission to introduce evidence of the "details of [Daniels's] prior criminal history and use of controlled substances and intoxicating liquors on and prior to July 27, 2020."

¶29. At the pretrial hearing on the day before trial, the trial court addressed the State's two evidentiary motions. As to the first motion concerning Daniels's Benton County conduct and charges, the defense conceded that "[t]he acts in question occur allegedly one right after another, and my client was finally apprehended in Benton County with, I imagine, certain

13

items of evidence the State will seek to introduce. As far as creating and completing their story, we would concede that point."

¶30. In granting the State's first motion, the trial judge specifically found that the felony-fleeing and the felon-in-possession-of-a-firearm charges were a "continuation of events" and admissible to show "lack of mistake or accident, motive, intent, things of that nature[.]" The trial judge also observed that the evidence was relevant because "if the proof is going to be that the same gun alleged to have been involved in the armed robbery and the aggravated assault was actually pointed at one of the officers in Benton County [(and it was)] . . . then I would find that the actions of pointing that gun, the gun used in the armed robbery and/or aggravated assault, that . . . would be relevant as well."[5]

¶31. With respect to the State's second motion, the trial court granted the State's request to introduce evidence of Daniels's prior drug and alcohol use. The trial court, however, specifically held "in abeyance a ruling on the admissibility of [Daniels's] prior felony convictions in the State of Texas."

### B. The Habitual Offender Reference and Daniels's First Motion for a Mistrial

---

[5] Likewise, in its written order, the trial court found that evidence of Daniels's "apprehension, arrest, and resulting [Benton County] felony charges" was admissible because "the events that occurred in Benton County are interrelated with the events in Tippah County and constitute a single transaction or occurrence." According to the order, the evidence was also admissible under Mississippi Rule of Evidence 404(b)(2) as "[p]roof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." The trial court further found that "the probative value of this evidence outweighs any prejudicial effect the introduction of said evidence will have at the trial of this matter."

14

¶32. The next day at trial, as the trial judge was explaining the nature of the case to the jury panel, he stated that Daniels was "charged in the indictment as a habitual offender." The record reflects that this reference was the only one the trial court made with respect to Daniels's habitual offender status. There is no indication in the record that the defense objected to the trial court's habitual offender reference at the time it occurred. Voir dire continued, challenges for cause and peremptory challenges were made, and the jury was selected and sworn in.

¶33. After a lunch break, the trial judge said to defense counsel, "I understand you have a motion, counsel." The defense confirmed that he did. At that point, the trial court heard the defense's motion for a mistrial "based on the reading of the indictment, particularly the portion containing the habitual offender section of Mr. Daniels's indictment during voir dire," which the defense asserted was in violation of Mississippi Rule of Criminal Procedure 19.1(a)(1) ("In summarizing the charge, all references to prior conviction(s) allowed as sentencing enhancers shall be omitted.").

¶34. In denying the defense's motion for a mistrial, the trial judge acknowledged that he regretted informing the jury "that [Daniels] was indicted as a habitual offender," but he found that "in this case . . . any error would be harmless because . . . [of] the nature of the insanity defense, which I will [explain] in just a moment . . . and then the 404(b) issues that we discussed yesterday and as both counsel have acknowledged." In this regard, the trial judge reiterated his ruling from the day before "that the statement regarding habitual offender status

15

was more in line with the [Rule 404(b)(2)] exceptions . . . based on the nature of offenses." Elaborating, the trial judge stated, "Specifically, there is a felon[-]in[-]possession[-]of[-]a[-]firearm charge that resulted as a continuation of these events regarding the allegation of the firearm and the allegation of [Daniels] pointing that firearm at a law enforcement officer when the high speed chase was concluded."

¶35. The trial judge also observed that after he had told the jury panel that Daniels was being tried as a habitual offender, "no comments were made by any of the [prospective] jurors in response to specific questions other than Juror 20 did make a comment that . . . if [Daniels is] a habitual offender, he said he couldn't be fair." The trial judge then specifically noted that "that juror [(Juror 20)] was excused for cause."

¶36. The trial judge then addressed the insanity defense, beginning by clearly stating, "*Finally, and being more specific about the insanity defense and the opening of the door, I have not ruled that anything other than prior* [*drug*] *use is being admitted*." (Emphasis added). Following that clarification, the trial judge noted, "But . . . the charges out of Benton County, [namely the] felon[-]in[-]possession [charge], shows a prior felony conviction. Counsel for the defense will definitely have to be careful about opening any doors." The trial judge then observed:

> But when counsel for the defense was questioning the jury during voir dire, he very correctly advised the jury that the insanity defense was going to be raised and that notice had been filed and that it was not a matter of if the defendant committed the wrongful acts but was he insane when he did so, did he have the mental capacity to understand right from wrong and to appreciate the consequences of his actions. I believe counsel even said not guilty by reason

16

of insanity.

The trial judge explained, "The reason that I bring that forward is because of the issues that came out yesterday in the 404(b) hearing [and] the rulings that have been entered by the Court," as well as "the insanity defense and related issues . . . *including the fact that charges are going to be introduced indicating that he is a prior felon by nature of the charge.*" (Emphasis added). For these reasons, the trial court found "that any error [in informing the prospective jurors of Daniels's habitual offender status] would be harmless because of the nature of the specific case and the facts and defenses that will be raised in this case."

### C.  Giving of a Limiting Instruction

¶37.  Following his ruling, the trial judge asked defense counsel whether he wanted "the Court to admonish the jury on the issue of prior convictions." Defense counsel confirmed that he did. The trial judge gave a limiting instruction, as follows:

> Ladies and gentlemen of the jury, one matter that came to my attention that I want to admonish you on is that during the course of this case, you are very likely to hear evidence at one portion about a prior conviction or prior convictions. And I want to tell you that if that evidence does come before you and there are prior convictions that are discussed, you are not to consider the fact that the defendant has any prior convictions if they are not specific elements to the crime that you are being asked to consider. Therefore, you should disregard any evidence submitted about prior convictions as far as the charges that you will be asked to decide when the case is submitted to you for deliberations.

### D.  Daniels's Renewed Motion for a Mistrial

¶38.  At the close of the State's case-in-chief, the defense renewed its motion for a mistrial. The trial judge denied the defense's renewed motion based on the court's prior Rule 404(b)

17

rulings and also because "now [there has been] . . . evidence admitted during trial [(Daniels's recorded interview)] and played . . . without objection of the defendant" in which Daniels "admitted that he . . . had done multiple prison stints in Texas in prison, that he had felony convictions." Continuing, the trial judge stated, "So based upon the original holding that I entered at the beginning of trial yesterday about the mistrial and including the additional items that I [have just] addressed about the video confession or audio confession that was played, I'm going to deny [the renewed motion for a mistrial]."

¶39. We turn now to a discussion of the issues Daniels raises on appeal.

## II. The Trial Court's Reference to Daniels's Habitual Offender Status

¶40. Daniels asserts that the trial court erred by telling the jury panel "that Daniels was charged as a habitual offender" in violation of Criminal Rule of Procedure 19.1(a)(1) and that the trial court erred in denying Daniels's subsequent motion for a mistrial in which Daniels raised this issue. We find these assertions are without merit for the reasons we discuss below.

¶41. "The decision to grant a mistrial rests within the sound discretion of the trial court." *Lewis v. State*, 110 So. 3d 814, 819 (¶14) (Miss. Ct. App. 2013) (citing *Evans v. State*, 725 So. 2d 613, 649 (¶114) (Miss.1998)). Mississippi Rule of Criminal Procedure 23.5 provides that a trial court "may declare a mistrial if there" is an error "resulting in substantial and irreparable prejudice to the movant's case." MRCrP 23.5. "Where 'serious and irreparable damage' has not resulted, the judge should 'admonish the jury then and there to disregard the

18

impropriety.'" *Carrier v. State*, 815 So. 2d 1222, 1225 (¶13) (Miss. Ct. App. 2001) (quoting

*Hoops v. State*, 681 So. 2d 521, 528 (Miss. 1996), *abrogated on other grounds by Willis v.

State*, 300 So. 3d 999, 1009 (¶30) & n.2 (Miss. 2020)).

¶42.    We find no reversible error in the trial court's denial of Daniels's motion for a mistrial

or the way in which the trial court handled its habitual offender reference in this case.  As an

initial matter, we find no indication in the record that the defense made a contemporaneous

objection to the trial court's habitual offender reference.  Any purported error based on the

trial court's reference is therefore waived.  *Carter v. State*, 227 So. 3d 416, 421 (¶14) (Miss.

Ct. App. 2017); *see* M.R.E. 103.  And even if the defense's subsequent motion for a mistrial

could be considered a timely objection, we find that any purported error was harmless. The

record reflects that the trial judge gave a limiting instruction once he confirmed that defense

counsel wanted one,[6] admonishing the jury "not to consider the fact that the defendant has

any prior convictions if they are not specific to the crime that you are being asked to

consider."

¶43.    *Johnson v. State*, 475 So. 2d 1136 (Miss. 1985), is instructive on this point.  In

*Johnson*, the trial court read the wrong indictment to the jury containing a charge that the

State had elected not to pursue.  *Id.* at 1141.  The trial judge admonished the jury to disregard

his mistake, and the Mississippi Supreme Court found that "[t]he admonition of the trial

---

[6] Daniels mistakenly states in his Appellant Brief that "no admonishment was ever given."  On the contrary, the record clearly reflects that once the jury was brought into the courtroom after lunch, the trial judge gave its limiting instruction.

judge to disregard his reading of the wrong indictment was adequate to remove any prejudice that might have formed in the minds of the jurors." *Id.* at 1142. The supreme court further recognized, "It is presumed that jurors follow the instructions of the court. To presume otherwise would be to render the jury system inoperable." *Id.* (citations omitted).

¶44. We find that the same analysis applies here. There is no indication in the record that any juror disregarded the trial judge's limiting instruction. Further, the trial judge specifically noted that only one potential juror commented on the habitual offender reference, and this juror was excused for cause. For these reasons, we find no error here, and Daniels's contentions lack merit. *See Carrier*, 815 So. 2d at 1225 (¶13).

### III.    Daniels's Benton County Charges and Related Testimony

¶45. Daniels asserts that the trial court erred because the jury heard "evidence of [Daniels's] prior convictions through reference to the Benton County felon[-]in[-]possession charge." Specifically, Daniels points to Investigator Bateman's testimony that "[i]n Benton County, [Daniels] was charged with felon in possession of a firearm . . . . He was a prior convicted felon and got caught with a firearm." Daniels asserts he was denied a fair trial because this evidence was admitted at trial. We find these assertions without merit as addressed below.

¶46. Evidentiary rulings are reviewed for an abuse of discretion, *Johnson v. State*, 204 So. 3d 763, 766 (¶7) (Miss. 2016), and are to be "affirmed unless they affect a substantial right of the complaining party." *Id.* (quoting *Sewell v. State*, 721 So. 2d 129, 138 (¶50) (Miss.

20

1998)).

¶47.   Mississippi Rule of Evidence 404(b) provides that in general, "evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." The rule further provides, however, that such evidence may be "admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." M.R.E. 404(b)(2). The Mississippi courts recognize that this list is "non-exhaustive" and "simply [provides] . . . examples of noncharacter purposes for which evidence of other crimes, wrongs, or acts may be admitted." *Johnson*, 204 So. 3d at 768 (¶14). In determining whether the admission of other crimes, wrongs, or acts was proper, this Court applies a two-part analysis: "The evidence offered must (1) be relevant to prove a material issue other than the defendant's character; and (2) the probative value of the evidence must outweigh the prejudicial effect." *Welde v. State*, 3 So. 3d 113, 117 (¶15) (Miss. 2009).

¶48.   Mississippi law also provides that "[p]roof of another crime or act is allowed when it is so interrelated to the charged crime that it constitutes either a single transaction or occurrence or a closely related series of transactions or occurrences." *Horton v. State*, 253 So. 3d 334, 341 (¶19) (Miss. Ct. App. 2018) (quoting *Price v. State*, 898 So. 2d 641, 653 (¶30) (Miss. 2005)). "The State has a legitimate interest in telling a rational and coherent story of what happened, and where substantially necessary to present to the jury the complete

21

story of the crime, evidence or testimony may be given even though it may reveal or suggest other crimes." *Id.* (internal quotation mark omitted).

¶49. In this case, the trial court found that Daniels's alleged crimes in Benton County were a continuation of the string of events originating in Tippah County and admissible pursuant to Rule 404(b)(2). The record supports the trial court's findings, and we find no abuse of discretion in the trial court's admissibility ruling. Daniels's conduct in Benton County and the charges arising from this conduct were "so interrelated to the charged crime[s]" that they constitute "a single action or occurrence or a closely related series of transactions or occurrences." *See id.* Investigator Bateman testified that James called the police at 8:56 a.m., Ryan Freeman called at 9:26 a.m. (one of the boys whom Daniels held at gunpoint, demanding his phone and wallet), the call from Musselman (regarding the shooting on the highway) occurred around 9:30 a.m., and Daniels was arrested in Benton County around 10:00 a.m. The rifle involved in the armed robberies of Ryan and Jake Freeman and the aggravated assaults of Musselman and Ramirez in Tippah County was the same rifle that Deputy Lollar testified Daniels pointed at him in Benton County and that Daniels flung from the gold Lexus when the pursuit ended in that county. The acts occurred on the same day, one right after another, and led to relevant evidence showing Daniels's "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." M.R.E. 404(b)(2).

¶50. Additionally, we find no abuse of discretion in the trial court's ruling that the Benton

22

County charges, including the felon-in-possession-of-a-firearm charge and Investigator Bateman's brief explanation of that charge, were relevant and admissible because Daniels asserted an insanity defense. "[W]hen the defense is insanity, either general or partial, the door is thrown wide open for the admission of evidence of every act of the accused's life relevant to the issue of sanity and is admissible in evidence." *Crawford v. State*, 867 So. 2d 196, 210-11 (¶51) (Miss. 2003).

¶51. In *White v. State*, 542 So. 2d 250 (Miss. 1989), the supreme court "found no error in the admission" of evidence brought out during cross-examination of a forensic psychologist relating to the defendant's prior conviction of a violent crime where the defendant had raised an insanity defense. *Id.* at 258. In reaching this conclusion, the supreme court noted that the psychologist testified that he used information about the defendant's prior conviction in his mental evaluation of the defendant and further testified that "he would have been interested in and would have carefully considered *any* violent offense [the defendant] may have had in evaluating for insanity." *Id.* The supreme court held, "[I]n light of [the psychologist's] admissions and because the past acts of a defendant who pleads insanity are always relevant, we find no error in the admission of this evidence." *Id.*; *see also Johnson*, 475 So. 2d at 1144 ("When the defense of insanity is raised, the entire life of the defendant is thrown open for admission into evidence."); *Bell v. State*, 287 So. 3d 944, 967 (¶75) (Miss. Ct. App. 2019) (Although there was no proof that the defendant had consumed alcohol or drugs during the time period of the crime in question, this Court found no abuse of discretion in the trial

23

court's allowing evidence of the defendant's history of alcohol and drug use where the defendant asserted an insanity defense, and the defendant's psychiatrist testified that this information was part of his "psychiatric history and diagnosis of [the defendant].").

¶52. Here, similar to the doctors in *White* and *Bell*, Dr. Galvez testified that his evaluation of Daniels consisted of "the information that was obtained from discovery as well as the background information from his family." Dr. Galvez also testified that in forming his opinions, he reviewed the investigative files of Daniels's pending charges in Benton County and found them "really helpful when evaluating [his] mental state."

¶53. Daniels cites *Nelson v. State*, 129 Miss. 288, 92 So. 66, 71 (1922), and a non-binding Alabama case, *Moore v. State*, 878 So. 2d 328 (Ala. Crim. App. 2003), in support of his assertion that the trial court erred in allowing into evidence Daniels's Benton County charges and Investigator Bateman's brief explanation of the felon-in-possession-of-a-firearm charge. In light of the Mississippi precedent discussed above and other distinguishing factors, we find Daniels's reliance on these cases unpersuasive.

¶54. In *Nelson*, the supreme court found that the *cumulative* effect of six errors at trial amounted to reversible error and entitled the defendant to a new murder trial. *Nelson*, 92 So. 66 at 71 (noting that the court was not "holding that each of the errors committed by the [trial] court is a reversible error" but that the culmination of errors under the facts of this case warranted a new trial). Daniels relies on one ruling to support his argument—the supreme court's determination that the trial court erred in allowing the State to ask a material witness

to the defendant's insanity defense whether he had ever bought or drunk wine or liquor that the defendant made. *Id.* at 69. The trial took place during Prohibition, and the supreme court found that the question "had absolutely no bearing on the guilt or innocence of [the defendant] of the [murder] with which he was charged." *Id.* In *Moore,* the Alabama court's non-binding decision was that "[b]ecause the State presented *nothing* to indicate that the [defendant's] prior convictions were relevant to Moore's mental state at the time of the present offense, the prior convictions were not admissible to rebut Moore's defense of not guilty by reason of mental disease or defect." *Moore,* 878 So. 2d at 337.

¶55. In Daniels's case, he claims no "cumulative error," unlike the defendant in *Nelson.* And unlike the circumstances in either *Nelson* or *Moore,* Dr. Galvez testified that the Benton County charges, including the felon-in-possession-of-a-firearm charge, were "really helpful" in evaluating Daniels's mental state. As addressed above, we find that *White* and *Bell* support our determination that the trial court did not abuse its discretion in finding that Daniels's insanity defense allowed evidence of Daniels's Benton County charges, including the felon-in-possession-of-a-firearm charge and Investigator Bateman's testimony about that charge, to be admitted at trial.

## IV. Daniels's Prior Texas Convictions

¶56. Daniels generally contends that allowing reference to his "prior convictions" at trial was prejudicial and in error. As set forth above, we have addressed this argument as it relates the trial court's habitual offender reference and the admissibility of Daniels's Benton

County charges (particularly the felon-in-possession-of-a-firearm charge) and Investigator Bateman's testimony explaining that firearm charge. To the extent Daniels contends that the trial court erred in allowing evidence of his prior convictions in Texas, in particular, we find that this issue is waived for the reasons we address below.

¶57. For ease of reference, we briefly review the trial court's pertinent rulings relating to this issue. The day before trial, the trial court ruled that it was holding "in abeyance a ruling on the admissibility of [Daniels's] prior felony convictions in the State of Texas." The next day (the first day of trial), Daniels moved for a mistrial based on the trial court's habitual offender reference. The trial court denied Daniels's motion and discussed Daniels's insanity defense in its ruling. Daniels asserts that by doing so, the trial court effectively no longer held the issue of his prior Texas convictions in abeyance. We disagree. Based on our close review of the transcript, we find that the trial court made no such definitive ruling with respect to Daniels's prior Texas convictions.

¶58. In addressing the insanity defense in the course of its ruling, the trial judge began by clearly stating, "Finally, and being more specific about the insanity defense and the opening of the door, *I have not ruled that anything other than prior* [*drug*] *use is being admitted*." (Emphasis added). The trial judge noted, however, that "the charges out of Benton County, [namely the] felon[-]in[-]possession [charge], shows a prior felony conviction. Counsel for the defense will definitely have to be careful about opening any doors." Thus, while the trial judge did refer to his ruling regarding the Benton County felon-in-possession-of-a-firearm

26

charge in the context of Daniels's insanity defense, we find no clear or definitive ruling by the trial court on the admissibility of Daniels's "prior felony convictions in the State of Texas"—the issue the trial court held in abeyance as stated in its pretrial order.

¶59. This point is important because during its case-in-chief, the State introduced Daniels's recorded statement into evidence—without objection from the defense. In that recorded interview, Daniels talked about his prior Texas convictions and the prison sentences that he served there for these felony convictions. The defense made no objection before or after the recording was played with respect to the statements about his Texas convictions. Daniels's failure to object to the admission of this evidence waives this issue on appeal. *Carter*, 227 So. 3d at 421 (¶14); *see* M.R.E. 103; *Duplantis v. State*, 644 So. 2d 1235, 1247 (Miss. 1994) ("[Defendant's] failure to object at trial to admission of certain other crimes evidence effectively precludes this Court from reviewing those instances on appeal.").

¶60. Although Mississippi Rule of Evidence 103(c)(1) provides that "[o]nce the court rules definitively on the record [on an issue] . . . a party need not renew an objection . . . to preserve a claim of error for appeal," no such ruling occurred here. It was incumbent on Daniels, as the party asserting error, to obtain "a definitive, on-the-record ruling" on this issue to preserve his objection to admitting evidence of his prior Texas convictions at trial. *See Walker v. State*, 299 So. 3d 759, 765 (¶21) (Miss. 2020). In *Walker*, the supreme court found "that the trial judge did not make a definitive, on-the-record ruling [on the defendant's objection] and that [the defendant's] attorney failed to ask for such a ruling. Because [the

27

defendant's] attorney did not insist that the trial judge make a definitive ruling, this issue has been waived." *Id.*

¶61. Similarly, we find Daniels has waived any objection to the admissibility of his prior Texas convictions in this case. Daniels failed to obtain a definitive ruling on this issue after the trial court explicitly held the issue in abeyance in its pretrial order and when it did not definitively address the admissibility of Daniels's prior Texas convictions in denying Daniels's motion for a mistrial. As has been long recognized under Mississippi law, "[w]here objection is made to evidence and the court reserves its ruling, the objector will be deemed to have waived his objection unless he requests a ruling thereon before the case is submitted to the jury." *McGee v. Md. Cas. Co.*, 240 Miss. 447, 451, 127 So. 2d 656, 657 (1961) (noting that it is the objector's duty to bring any reserved ruling to the trial judge's attention).

¶62. At the close of the State's case-in-chief, the defense renewed its motion for a mistrial. We find it relevant that the trial court denied Daniels's renewed motion for a mistrial not only based upon its prior rulings, but also because "*now* [there has been] . . . evidence admitted during trial [(Daniels's July 29, 2020 recorded interview)] and played . . . *without objection of the defendant*" in which Daniels "admitted that he . . . had done multiple prison stints in Texas in prison, that he had felony convictions." (Emphasis added).

¶63. In sum, based upon our review of the record as a whole, we find that when Daniels failed to ever obtain a definitive ruling on the admissibility of his prior Texas convictions and

28

then failed to object when this testimony was admitted, Daniels waived this issue for appeal. Additionally, given these circumstances and Daniels's failure to seek a definitive ruling or clarification on the admissibility of the prior Texas convictions, we find no basis for any purported assertion on Daniels's part that the trial court erred in allowing proof of his prior Texas convictions into evidence.

¶64. Lastly, Daniels asserts that "[t]he State's use of the evidence [of his Texas prior offenses] was improper," pointing to the prosecutor's statement in the rebuttal portion of his closing argument that "[w]hat is important is that on those prior offenses in Texas, he [(Daniels)] accepted responsibility and didn't raise insanity." The defense made no objection to this statement at trial. Daniels's failure to object during "the prosecutor's closing arguments [means] his arguments are procedurally barred on appeal." *Evans v. State*, 226 So. 3d 1, 31 (¶78) (Miss. 2017).

¶65. Nevertheless, the supreme court recognizes that "[al]though the failure to object contemporaneously generally waives a claim of prosecutorial misconduct during closing argument, we will review such a claim if the prosecutor's statement was so inflammatory that the trial judge should have objected on his own motion." *Id.* (quoting *O'Connor v. State*, 120 So. 3d 390, 399 (¶26) (Miss. 2013)). We find that the prosecutor's statement in this case was not so inflammatory that the trial judge should have taken action sua sponte. Indeed, as discussed above, Daniels allowed evidence of his Texas convictions to be admitted into evidence without objection, and the trial judge even pointed to these circumstances as an

additional basis for denying Daniels's renewed motion for a mistrial. Daniels's assertions on this point do not change our determination that the trial court did not abuse its discretion in its evidentiary rulings in this case. Accordingly, Daniels's convictions and sentences are affirmed.

¶66.  **AFFIRMED.**

**BARNES, C.J., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY AND SMITH, JJ., CONCUR. WILSON, P.J., AND EMFINGER, J., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**